(No. 80891.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. JOHN SZABO, Appellant.

*Opinion filed December 3, 1998.—Rehearing denied*
*March 29, 1999.*

FREEMAN, C.J., joined by HEIPLE, J., specially concurring.
HARRISON, McMORROW and NICKELS, JJ., dissenting.

David Rubman, of Rubman & Compernolle, and
Richard E. Cunningham, all of Chicago, for appellant.

20

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and William L. Browers, Arleen C. Anderson and Steven R. Splitt, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, John Szabo, brings this appeal from an order of the circuit court of Will County denying his post-conviction petition after an evidentiary hearing. Because the defendant received the death penalty for the underlying murder convictions, the present appeal lies directly to this court. 134 Ill. 2d R. 651(a).

The defendant was convicted of murder and sentenced to death in the circuit court of Will County in 1979. In the appeal from that judgment, this court vacated the defendant's convictions and remanded the cause for a determination whether a new trial was necessary because of an alleged discovery violation. At the same time, the court vacated the defendant's death sentence and directed the trial court to conduct a new sentencing hearing if the convictions were able to stand. *People v. Szabo*, 94 Ill. 2d 327, 447 N.E.2d 193 (1983). On remand, the trial court reinstated the defendant's convictions, and a new sentencing hearing, conducted before a jury in 1984, again resulted in a sentence of death. This court subsequently affirmed the defendant's convictions and death sentence (*People v. Szabo*, 113 Ill. 2d 83, 497 N.E.2d 995 (1986)), and the United States Supreme Court denied *certiorari* (*Szabo v. Illinois*, 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330 (1987)).

The defendant initiated post-conviction proceedings in August 1987. In a *pro se* petition, the defendant challenged the competence of the lawyer who represented

him at trial in 1979, David Landau. The defendant also challenged the competence of the two lawyers who represented him at the second sentencing hearing in 1984, Paul Bjekich and Daniel Doyle. The defendant contended that Landau, the 1979 trial lawyer, was ineffective because he was under investigation by the Attorney Registration and Disciplinary Commission while he was representing the defendant. Separately, the defendant contended that Bjekich and Doyle, his 1984 resentencing lawyers, did not adequately prepare and present certain mitigating evidence, including evidence of the defendant's good conduct while incarcerated for the present offenses, and evidence that the defendant was acting under extreme mental or emotional disturbance at the time of the offenses. Counsel, Lawrence Morrissey, was appointed to represent the defendant in the post-conviction proceedings. The circuit court denied relief after an evidentiary hearing, and this court affirmed the judgment (*People v. Szabo*, 144 Ill. 2d 525, 582 N.E.2d 173 (1991)). The United States Supreme Court denied *certiorari*. *Szabo v. Illinois*, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 99 (1992).

In February 1993, this court filed an opinion in an unrelated post-conviction matter, *People v. Johnson*, 154 Ill. 2d 227, 609 N.E.2d 304 (1993), which addressed the duties of post-conviction counsel under Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)). Regarding the record that must be prepared in the circuit court by appointed counsel in a post-conviction case, Rule 651(c) provides in pertinent part:

"The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional right, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions."

*Johnson* found that post-conviction counsel in that case had failed to comply with Rule 651(c) because he had not amended the defendant's *pro se* petition or submitted affidavits from possible mitigation witnesses identified in the petition. The court remanded the cause so that counsel could satisfy the requirements of the rule.

In May 1993, several months after the *Johnson* decision, the defendant, represented by new counsel, initiated the present action by filing a second post-conviction petition in the circuit court of Will County. By agreement of the parties a pending federal *habeas corpus* proceeding, which the defendant had filed in late April 1993, was dismissed without prejudice, so that the defendant could proceed on his state action. As the contents of the second post-conviction petition make clear, the impetus for the defendant's new petition was this court's decision in *Johnson*. Citing *Johnson*, the defendant alleged in his second petition that the lawyer representing him in the first post-conviction proceeding, Lawrence Morrissey, had failed to comply with Rule 651(c) by not submitting affidavits in support of the petition and by not amending the original *pro se* petition, as Rule 651(c) requires. In addition, the second post-conviction petition realleged the claims raised in the first petition regarding the conduct of Bjekich and Doyle at the resentencing hearing.

The State initially moved to dismiss the defendant's second post-conviction petition, arguing that it was a repetitive action barred by this court's earlier decision on the defendant's first post-conviction petition. The circuit court denied the State's dismissal motion. An evidentiary hearing on the substantive allegations in the defendant's second post-conviction petition was later conducted before a different judge, who denied relief. The defendant now brings this appeal from the denial of his second post-conviction petition. 134 Ill. 2d R. 651(a).

I

As a preliminary matter, we believe it is appropriate to consider whether the defendant may prosecute a second post-conviction petition in this case. Although the State does not renew before this court its contention that the present matter must be dismissed as a repetitive action, we believe that this inquiry, undertaken on our own initiative, is proper here. Waiver is not a bar to our consideration of the issue, for we have an obligation to ensure the uniform and orderly development of the law (see *Hux v. Raben*, 38 Ill. 2d 223, 224-25 (1967)), and therefore we will consider here the timeliness of the defendant's second post-conviction petition.

As we have stated, this court previously affirmed the circuit court's denial of relief on the defendant's first post-conviction petition. *People v. Szabo*, 144 Ill. 2d 525, 582 N.E.2d 173 (1991). At that time the court found that the lawyer who represented the defendant at the initial post-conviction hearing, Lawrence Morrissey, had substantially complied with Supreme Court Rule 651(c). *Szabo*, 144 Ill. 2d at 531-33. Notwithstanding that determination, the defendant subsequently initiated the present proceeding, which constitutes his second post-conviction challenge to the underlying convictions and death sentence. The question that arises is whether the defendant may now pursue a second post-conviction petition, following the rejection of his first.

This court has previously allowed a successive post-conviction petition to go forward only when the proceedings on the initial petition were "deficient in some fundamental way." *People v. Flores*, 153 Ill. 2d 264, 273-74, 606 N.E.2d 1078 (1992). This limitation on the circumstances in which successive petitions are allowed is designed to achieve a balance between society's interest in the finality of criminal convictions and the individual defendant's interest in vindicating constitutional rights. *Flores*, 153 Ill. 2d at 274. In opposition to the State's dis-

missal motion in the circuit court below, the defendant contended that the proceedings on his initial post-conviction petition were fundamentally deficient. The defendant argued below, in opposition to the State's dismissal motion, that our earlier decision regarding the initial petition should not preclude the present action, because the earlier decision did not adequately resolve all the issues then pending. The defendant asserted that this court had misapprehended the basis for the argument on appeal that counsel had failed to comply with Rule 651(c). The defendant believed that this court had focused on the challenge to the performance of trial counsel, David Landau, and had failed to consider the separate challenges to the performance of counsel at the resentencing hearing, Bjekich and Doyle.

Our earlier decision affirming the denial of post-conviction relief, *People v. Szabo*, 144 Ill. 2d 525 (1991), would normally be sufficient to negate any suggestion that the defendant is now entitled to a second opportunity to establish a constitutional defect in the sentencing proceedings. The defendant's first post-conviction petition alleged incompetence by the defendant's trial lawyer and by the two lawyers who represented the defendant at the resentencing hearing. On appeal from the denial of post-conviction relief, the defendant argued before this court that post-conviction counsel had failed to properly substantiate those claims. *Szabo*, 144 Ill. 2d at 532. At that time, this court rejected the defendant's challenge to post-conviction counsel's performance, concluding that adequate compliance with Rule 651(c) had been shown. Although the record did not contain an affidavit from post-conviction counsel, as required by Rule 651(c), the court nonetheless excused its absence, noting that the record as a whole evidenced sufficient compliance with the requirements of the rule. The court explained, "The record indicates that there was considerable communication between post-conviction

counsel and defendant, and that defendant received reasonable assistance of counsel as contemplated by the rule." *Szabo*, 144 Ill. 2d at 532.

Our subsequent decision in *Johnson* cited favorably to this court's disposition of defendant Szabo's first post-conviction petition. *Johnson* stated:

> "Rule 651(c) requires post-conviction counsel to file an affidavit certifying that he or she has complied with these requirements. Although this court has held that compliance with the duties set out in Rule 651(c) is mandatory, the absence of counsel's affidavit will be excused where the record demonstrates that counsel adequately fulfilled his duties as post-conviction counsel. *People v. Szabo* (1991), 144 Ill. 2d 525." *Johnson*, 154 Ill. 2d at 238.

Thus, our earlier opinion in *Szabo* concluded that Rule 651(c) had been complied with, and our later opinion in *Johnson* reaffirmed that holding. Nonetheless, the defendant now wishes to challenge that earlier determination—in substance, the defendant now seeks a reexamination of the holding in the appeal from the first post-conviction petition (*Szabo*, 144 Ill. 2d 525) that post-conviction counsel sufficiently complied with Rule 651(c)'s requirements. We believe that a number of important considerations bar a reexamination of our earlier ruling.

We see no reason to excuse this repetitive filing, even on the ground that the holding in *Johnson* required post-conviction counsel to do more than what was done in that earlier proceeding. *Johnson* was decided after the present defendant's appeal from the denial of his first post-conviction petition. We do not believe that *Johnson* controls the outcome of the present case, any more than we believe that *Johnson* governs other post-conviction matters that were concluded long ago. The proceedings on defendant Szabo's first post-conviction petition had been entirely completed by the time *Johnson* was decided. *Johnson* remanded a post-conviction appeal to

the circuit court so that post-conviction counsel could submit affidavits from potential witnesses in support of the petition. That we did not order the same remedy in defendant Szabo's earlier appeal, decided before *Johnson,* does not mean that we must now permit defendant Szabo to proceed with a second post-conviction petition, which is based, in substance, on a challenge to the performance of his initial post-conviction lawyer.

We have previously held that the post-conviction process does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier post-conviction proceeding. *People v. Flores,* 153 Ill. 2d 264, 276-77, 606 N.E.2d 1078 (1992). The reasons for this rule are clear. Post-conviction relief is limited to constitutional deprivations occurring at trial or sentencing. 725 ILCS 5/122—1(a) (West 1996). The conduct of counsel in an earlier post-conviction proceeding, however, is by definition outside the ambit of post-conviction relief. Moreover, because there is no constitutional right to counsel in post-conviction proceedings (*Pennsylvania v. Finley,* 481 U.S. 551, 555, 95 L. Ed. 2d 539, 546, 107 S. Ct. 1990, 1993 (1987)), the conduct of post-conviction counsel is not subject to a later constitutional challenge. Because the present defendant's second post-conviction petition is, in essence, a challenge to the performance of counsel at the initial post-conviction proceeding, this successive petition should be barred. *Flores,* 153 Ill. 2d at 280. *Johnson* itself does not endorse successive petitions; that case involved a first post-conviction petition.

II

Even if we were to consider the merits of the defendant's second post-conviction petition, we would not find that the defendant had established a violation of the right to the effective assistance of counsel occurring at his resentencing hearing.

Allegations of ineffective assistance of counsel are

generally measured against the two-part standard expressed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). To prevail on a claim of ineffective assistance under *Strickland*, a defendant must establish both that counsel's performance was deficient and that the deficiency proved to be prejudicial. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Judicial scrutiny of counsel's performance is highly deferential under *Strickland*, and a court considering an ineffectiveness claim "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. To establish prejudice resulting from an asserted deficiency in counsel's performance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

## A

The defendant first argues that counsel at the resentencing hearing should have presented favorable testimony from a number of jail and prison officers who would have described the defendant as a model prisoner following his incarceration on the charges here. The judge below concluded that the defendant sustained prejudice by his attorneys' failure to present this evidence. Still, the judge concluded that counsel was not deficient in failing to do so, and the judge accordingly rejected this claim of ineffective assistance of counsel.

At the evidentiary hearing on the defendant's second post-conviction petition, the judge heard the testimony of one of the lawyers, Paul Bjekich, who represented the de-

fendant on resentencing. Bjekich stated that it was his understanding that the defendant would still testify, even after the denial of a defense motion *in limine* that sought to restrict any cross-examination of the defendant. Counsel proposed to present evidence of the defendant's favorable adjustment to prison life through the testimony of the defendant himself.

At the evidentiary hearing below, Bjekich was confronted with a portion of the transcript from the resentencing hearing, at which the defendant briefly took the stand in the wake of the denial of the defense motion *in limine*. At that time the defendant said that, because the motion had been denied, he would not testify in his own behalf. At the evidentiary hearing below, however, Bjekich stated that it had still been the defense plan for the defendant to testify, even after the denial of the motion *in limine*. The judge in the proceedings below credited Bjekich's testimony, and the judge found that counsel was not deficient for failing to have an alternative plan ready in case the defendant did not take the stand in his own behalf at the resentencing hearing. The credibility determination made by the judge is entitled to substantial weight, and we will not interfere with it.

The defendant further suggests, however, that counsel acted unreasonably, even if Bjekich's testimony at the evidentiary hearing below is accepted as true. The defendant apparently believes that counsel should have made the defendant's good conduct while incarcerated the centerpiece of the mitigation case at the second sentencing hearing. In fact, although counsel did not choose to make this the central feature of the defense, counsel did introduce some evidence on this point, and we will not attempt to second-guess this strategic decision. At the resentencing hearing, counsel chose instead to emphasize the disparity between a death sentence for the defendant and the relatively brief prison term

received by a codefendant convicted of the same offenses. In addition, counsel presented testimony from the defendant's family members, who described, among other things, the defendant's favorable adjustment to prison life. To be sure, counsel could have introduced testimony from jail and prison officials, for evidence like that may not be barred at a capital sentencing hearing. *Skipper v. South Carolina*, 476 U.S. 1, 90 L. Ed. 2d 1, 106 S. Ct. 1669 (1986). *Skipper* did not also hold, however, that counsel must be deemed ineffective for failing to present available testimony of that nature.

In describing the proposed testimony of these omitted witnesses, the defendant mentions their opinions that the defendant should not have received the death sentence for these crimes. We note, however, that testimony of that nature is not allowed at a death penalty hearing. This court has consistently held that mitigation witnesses' views that the defendant should not be sentenced to death are inadmissible at a capital sentencing hearing. *People v. Stewart*, 105 Ill. 2d 22, 67 (1984); *People v. Yates*, 98 Ill. 2d 502, 535 (1983); *People v. Williams*, 97 Ill. 2d 252, 300-01 (1983). Thus, certain portions of the favorable testimony proposed by the defendant would not have been admissible at his capital sentencing hearing.

Before this court, the defendant briefly argues that resentencing counsel should have also introduced expert testimony about the defendant's future lack of dangerousness if sentenced to prison instead of death. The defendant did not raise this claim in his second post-conviction petition, however, and therefore we must consider it waived. *People v. Davis*, 156 Ill. 2d 149, 619 N.E.2d 750 (1993).

## B

The defendant also presented a second ground in the proceedings below in support of his contention that his

two lawyers at the resentencing hearing were ineffective. Specifically, the defendant presented testimony from a psychologist, Dr. William Hillman, regarding the defendant's mental condition at the time of the offenses. The defendant sought to show through Dr. Hillman's testimony that counsel acted unreasonably in failing to present evidence of the defendant's psychological state at the time of the offenses here. The defendant argued that evidence of this nature would have been mitigating and could have been used to establish that the defendant was acting under the influence of an extreme mental or emotional disturbance when he committed the charged offenses.

The judge below rejected this claim following the evidentiary hearing. The judge concluded that counsel did not act deficiently in failing to present testimony of the type proposed by the defendant and, further, that the defendant was not prejudiced by counsel's failure to do so. The judge did not believe that he should give much weight to Dr. Hillman's testimony in 1995, the time of the hearing on the second post-conviction petition, regarding the defendant's mental state some 16 years earlier, at the time of the commission of the offenses. The court noted that Bjekich was aware of similar testimony from the initial sentencing hearing, conducted in 1979, which resulted in a sentence of death. The judge explained further that evidence of psychological or mental impairment could be construed either favorably or unfavorably by a sentencing jury, and that use of evidence of that nature was essentially a question of strategy, subject to different opinions.

We conclude that the judge's determination is not against the manifest weight of the evidence. The judge found unpersuasive Dr. Hillman's testimony about the defendant's mental state in 1979, and we see no reason to disturb that determination. We cannot conclude that

the counsel were required to add this additional theory to the mitigation strategy they pursued at the resentencing hearing. See *People v. Erickson*, 161 Ill. 2d 82, 89-92 (1994).

\* \* \*

In sum, the defendant may not pursue a second post-conviction petition. Moreover, even if we consider the merits of the defendant's second post-conviction petition, we do not believe that the defendant is entitled to relief on the grounds raised in that petition.

For the reasons stated, the judgment of the circuit court of Will County is affirmed. The clerk of this court is directed to enter an order setting Monday, March 22, 1999, as the date on which the sentence of death entered in the circuit court of Will County is to be carried out. The defendant shall be executed in the manner provided by law (725 ILCS 5/119—5 (West 1996)). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where the defendant is now confined.

*Judgment affirmed.*

CHIEF JUSTICE FREEMAN, specially concurring:

I agree that the doctrine of *res judicata* bars this, defendant's second successive, post-conviction petition. Accordingly, I join in Part I of the above opinion, and it is on this basis that I concur in the conclusion that the circuit court's judgment must be affirmed. That being the case, I see no legitimate reason to further hold, in Part II, that defendant has not established a violation of the right to the effective assistance of counsel, an analysis that I can only characterize as an "alternative" holding. Such an alternative holding, however, sends a mixed message to both bench and bar—that despite this court's professed disapproval of successive post-conviction peti-

tion filings and despite the fact that the Post-Conviction Hearing Act contemplates the filing of only one petition, we will nevertheless look to the merits of the claim even when *res judicata* bars relief. Accordingly, I do not join in Part II. In view of my belief that *res judicata* bars defendant's petition, I write separately in order to express my thoughts regarding (i) why our decision in *Johnson* does not support relaxing the *res judicata* effect of defendant's first post-conviction proceeding and (ii) the circumstances under which a second post-conviction petition may be proper.

I

A detailed factual recitation is warranted in light of the important procedural questions which have arisen in this case. Defendant's original convictions and sentence of death were vacated by this court on direct appeal. See *People v. Szabo*, 94 Ill. 2d 327 (1983) (*Szabo I*). On remand, the circuit court reinstated defendant's convictions, and following a second capital hearing, a jury voted to impose the death penalty. This court affirmed both the convictions and the sentence of death (see *People v. Szabo*, 113 Ill. 2d 83 (1986) (*Szabo II*), and the United States Supreme Court denied *certiorari* (*Szabo*, 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330).

In August 1987, defendant filed a *pro se* petition for post-conviction relief, alleging in part that he had received ineffective assistance of counsel during his second capital sentencing hearing held in 1984. Specifically, defendant claimed that his attorneys, Paul Bjekich and Daniel Doyle, were ineffective for failing to call or conduct any investigation regarding (i) eight named jail and prison officials who were available and willing to testify to defendant's good behavior while he was incarcerated between 1979 and 1984 and (ii) various experts who would have testified about the effect of defendant's drug usage on his mental health at the time

of the murders. Because these claims were *de hors* the record at the time of defendant's direct appeal in *Szabo II* and therefore could not have been asserted in that appeal, defendant's presentation of them in a post-conviction petition was proper. See, *e.g.*, *People v. Eddmonds*, 143 Ill. 2d 501 (1991); *People v. Owens*, 129 Ill. 2d 303 (1989). Accordingly, the circuit court appointed attorney Lawrence Morrissey to represent defendant during his post-conviction proceedings. Morrissey informed the circuit court that the defense would stand on the *pro se* petition, and the State moved to dismiss the action. The circuit court denied the State's motion and held an evidentiary hearing on the petition. The court ultimately denied post-conviction relief, finding, *inter alia*, that defendant had presented no evidence at the evidentiary hearing to substantiate his claim that Bjekich and Doyle provided ineffective assistance during the 1984 capital sentencing hearing.

Defendant again appealed to this court—this time represented by the office of the State Appellate Defender. In that appeal, defendant maintained, among other things, that Morrissey failed to comply with Supreme Court Rule 651(c) in representing defendant during the post-conviction proceedings. *People v. Szabo*, 144 Ill. 2d 525, 531-32 (1991) (*Szabo III*). Rule 651(c) requires appointed counsel to certify that he or she has made the necessary amendments to a *pro se* petition so that a petitioner's contentions are adequately presented to the courts for their consideration of whether post-conviction relief must be granted. See 134 Ill. 2d R. 651(c). This court rejected defendant's claim, specifically holding that Rule 651(c) had been satisfied and that the "record clearly support[ed] the trial court's finding of effective assistance of appointed counsel [Morrissey]." The United States Supreme Court denied *certiorari. Szabo*, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 99.

Defendant, having thus exhausted his state appeals, next initiated federal *habeas corpus* proceedings. Meanwhile, this court stayed defendant's execution pending the filing and disposition of defendant's petition for *habeas corpus* which was to be filed on April 30, 1993. At that time, defendant was represented by attorneys from the Illinois Capital Resource Center for the office of State Appellate Defender, who began an investigation of the correctional guards named in defendant's first petition for post-conviction relief. These attorneys also hired a psychological expert to evaluate defendant's mental health. It was during this time that we announced our decision in *People v. Johnson*, 154 Ill. 2d 227 (1993). A short while later, defendant's attorneys filed defendant's second petition for post-conviction relief on May 20, 1993, the denial of which is the subject of this appeal. The record reveals that in the petition, defendant maintained that our decision in *Johnson* "dictate[d] that [the circuit] court entertain the present post-conviction petition [because] [l]ike Johnson, [defendant] named in his post-conviction petition prison officials who were available to testify at this sentencing hearing." Defendant contended that his original post-conviction counsel, Morrissey, "had no strategic reason" for failing to present the evidence regarding the prison officials. He also noted that this second petition was "really nothing more [than] amended petition contemplated by the Post-Conviction Hearing Act, *** being filed expeditiously by the first trial attorneys [defendant] has had since Morrissey left the case." Defendant asserted that the grounds for post-conviction relief were the failure of Bjekich and Doyle to investigate and present as witnesses (i) the various correctional officials who were willing to testify as to defendant's good behavior while defendant was incarcerated between 1979 and 1984 and (ii) several psychological experts who would have testified that defendant com-

mitted the crime while under extreme mental or emotional disturbance. Attached to the petition were the affidavits of five prison officials and a psychological report prepared by a mental health expert. Notably absent from the petition was any affidavit from Morrissey which explained the reason for his decision not to pursue the issue of the correctional officers' potential testimonials.

The State moved to dismiss defendant's petition, arguing that the asserted claims had been previously adjudicated in defendant's initial post-conviction proceeding. Although the State acknowledged that Illinois courts have, in limited cases, allowed the filing of a second petition, the State insisted that defendant's second petition was devoid of the necessary allegations that would permit a successive filing. The State also contended that concerns of finality prevented a successive petition in this case. In response, defendant admitted that his claim of ineffective assistance of counsel at sentencing had been presented in his initial post-conviction petition. Nevertheless, he maintained that his attorney, Morrissey, had not presented any evidence to substantiate the claim at that proceeding, even though defendant's *pro se* petition had identified the potential witnesses by name. Defendant emphasized that although he had identified these witnesses as early as 1987, he "ha[d] *never* had a chance to present those arguments to *any* court." (Emphasis in original.) Thus, according to defendant, Morrissey provided him with "no representation whatsoever regarding the claims relating to the sentencing hearing." The circuit court denied the State's motion to dismiss and eventually held the evidentiary hearing described in the majority opinion. At the conclusion of the hearing, the circuit court denied defendant's second petition, and this appeal followed.

## II

The circuit court apparently agreed with defendant

that our decision in *Johnson* "dictates" that the state courts must once again entertain his claims regarding the ineffectiveness of Bjekich and Doyle. Notwithstanding defendant's characterizations, this petition cannot, in any way, be deemed an "amended" petition. Once this court issued its opinion in *Szabo III* and the United States Supreme Court denied *certiorari* in the matter, there was simply nothing left of defendant's first petition to amend. Defendant's post-conviction petition and the claims raised in it were finally adjudicated at that point in time. See *People v. Richeson*, 50 Ill. 2d 46, 47 (1971).

Defendant's motivation for portraying his second petition as nothing more than an "amended first petition" becomes obvious upon review of this court's previous holdings with respect to multiple petitions for post-conviction relief. Under Illinois law, successive post-conviction proceedings cannot be used to assail previous post-conviction counsel. In *People v. Flores*, 153 Ill. 2d 264, 276 (1992), we explained that the sixth amendment right to counsel has not been found to apply to attorneys representing petitioners in post-conviction proceedings. See also *Pennsylvania v. Finley*, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 546, 107 S. Ct. 1990, 1993 (1987). As the majority correctly notes, the reason a sixth amendment right to counsel does not attach in post-conviction proceedings is because a defendant's right to counsel in the proceedings derives not from the state or federal constitution, but from the Post-Conviction Hearing Act (Act) itself. As a result, post-conviction petitioners are guaranteed only the level of assistance provided by the Act. This court has interpreted the Act to provide only for a "reasonable" level of assistance from their attorneys during these proceedings. See *Flores*, 153 Ill. 2d at 276. Thus, post-conviction petitioners cannot present claims of ineffective assistance of post-conviction counsel based on the sixth amendment in subsequent post-conviction petitions.

In addition,

"where a defendant files a second or subsequent post-conviction petition wherein he claims ineffective assistance in his first post-conviction proceeding, because the Act is confined to errors which occurred in the original proceeding [the actual trial] only, such claims are beyond the scope of the Act." *Flores*, 153 Ill. 2d at 280.

Finally, petitioners cannot obtain relief under the Act simply by "rephrasing previously addressed issues in constitutional terms" in their petitions. *People v. Gaines*, 105 Ill. 2d 79, 90 (1984).

In his second post-conviction petition, defendant was careful not to assert a specific claim of ineffectiveness on the part of Morrissey as grounds for granting relief under the Act. His action was prudent—the above-noted case-law teaches us that such a claim would fall outside the scope of the Act.[1] Only those claims which assert a deprivation of a constitutional right *which occurred at trial* fall within the ambit of the Act. Defendant's second petition, however, once again mentions Morrissey's failure, during the first proceeding, to comply with Rule 651(c) and his failure to substantiate defendant's *pro se* allegations, although defendant does not ground his request for post-conviction relief on these purported shortcomings. Rather, he identifies only Bjekich and Doyle's (the 1984 sentencing attorneys) purported ineffectiveness as the *actual* basis for the relief. This bootstrapping explains why defendant chose to characterize the second petition as an amendment—any subsequent petition which solely challenged Morrissey's performance would not meet the

---

[1]Defendant's contention, however, that Morrissey "had no strategic reason" for not undertaking an investigation of the named guards does have the familiar ring of a *Strickland* claim, *i.e.*, counsel's decision to forgo the investigation was objectively unreasonable, as it was neither the product of an informed judgment nor a strategic decision reached after weighing all available options. As noted above, such a sixth amendment based claim is not cognizable under the Act.

criteria for relief under the Act. Moreover, the operation of *res judicata* would bar any second petition which attempted solely to relitigate the Bjekich/Doyle claim, for that very issue had been adjudicated against defendant at the initial post-conviction proceeding. In the words of the trial judge who denied the petition, "no evidence [was] presented in connection with [the] substantiation of that [ ]claim." We affirmed that finding on appeal, rejecting defendant's argument that Morrissey had failed to comply with Rule 651(c). This determination ordinarily will bar, under the doctrine of *res judicata*, any successive claim concerning Morrissey's failure to substantiate defendant's *pro se* allegations concerning the prison guards. In fact, this court very recently reaffirmed this basic tenet of post-conviction jurisprudence in *People v. Erickson*, 183 Ill. 2d 213 (1998) (foreclosing relitigation of defendant's failure to investigate claim in a second post-conviction proceeding where defendant had raised same claim in a first petition).

Apparently mindful of these rather well-settled principles, defendant now attempts to use our decision in *Johnson* in order to skirt the *res judicata* effect of our decision in *Szabo III* and to avoid the conclusion that defendant's second petition is, in reality, nothing more than an improper challenge to Morrissey's performance at the first post-conviction proceedings. Although the majority rightly rejects this argument (see 186 Ill. 2d at 25), I would add the following observations to the analysis.

In my view, nothing in our opinion in *Johnson* allows Morrissey's performance in the first post-conviction proceedings to form the basis for relief in a second proceeding. As an initial matter, I strongly question the propriety of relying on a case decided *after* a defendant has completed post-conviction review in order to allow that same defendant to renew claims which had, up until

that point in time, been finally adjudicated. *Johnson* did not announce a new rule of constitutional law to which one might argue necessitates retroactive application. Rather, the case concerned only an interpretation of one of this court's own rules. Moreover, unlike the present case, defendant Johnson's appeal came before this court upon the dismissal, without an evidentiary hearing, of his *first* post-conviction petition. *Johnson*, 154 Ill. 2d at 234. Therefore, this court was not presented with the procedural concerns which arise whenever a *subsequent* petition is filed, and, as a result, those concerns were necessarily absent from our analysis. Notwithstanding this important distinction, the specific facts in *Johnson* serve to further differentiate it from the case at bar. While Johnson's petition had been pending before the circuit court, Johnson's appointed counsel failed to support the *pro se* allegations with affidavits or other supporting documents, despite the fact that Johnson had specifically identified both witnesses and documents which would have supported the allegations raised in the petition. *Johnson*, 154 Ill. 2d at 239. Appellate counsel then filed a supplemental record on appeal in this court which contained the affidavit of Johnson's post-conviction trial attorney. In this affidavit, counsel admitted that he did not attempt to contact or obtain affidavits from any of the prison employees named in the *pro se* petition. Nor did he attempt to review the documents to which Johnson had referred. *Johnson*, 154 Ill. 2d at 245-47. Based on the allegations contained in the affidavit, appellate counsel argued that post-conviction counsel could not be said to have complied with Rule 651. We agreed, determining from the affidavit that post-conviction counsel made no effort at all to contact the witnesses specifically identified by name in Johnson's *pro se* petition even though he had an obligation to do so under Rule 651(c). In addition, the record in *Johnson* "sug-

gest[ed] that counsel may have been under the misapprehension that the post-conviction petition would not [have been] dismissed without an evidentiary hearing. Counsel may have believed that there was no need to contact witnesses named in the post-conviction petition until after the matter was set for an evidentiary hearing." *Johnson*, 154 Ill. 2d at 248-49. For this reason, we concluded that a remand was necessary to give counsel the opportunity to contact the witnesses named in the post-conviction petition. In this way, the circuit court could then reconsider the State's motion to dismiss the petition on the basis of a properly developed record. *Johnson*, 154 Ill. 2d at 249.

In contrast, I note that no affidavit from attorney Morrissey has ever been made a part of the record in this case. Defendant's present attorneys merely attached the affidavits of the prison guards themselves to the self-styled "amended" petition. As a result, we today do not know the reasons behind Morrissey's decision not to produce evidence of the guards' opinions regarding defendant's behavior while incarcerated. Consequently, we have no objective basis on which to conclude, as we did in *Johnson*, that Morrissey did not meet his obligation under Rule 651(c). More importantly, no such affidavit was supplemented to the record when the matter of Morrissey's failure to contact these witnesses was first presented to this court in *Szabo III* back in 1991. Therefore, this court in 1991 did not know the reason behind Morrissey's decision not to seek out affidavits from the guards and, as a result, we could not grant defendant in 1991 the type of relief we ultimately granted to Johnson in 1993. In light of these facts, *Johnson* simply does not provide this court with the proper basis for relaxing the *res judicata* effect of our previous holding in *Szabo III*.

### III

In order to maintain a consistent body of law in the area of post-conviction review, the threshold question

that must be addressed in this case is whether the doctrine of *res judicata* can, in any way, be relaxed so that this court can *legally and legitimately* reach the merits of defendant's claim that Bjekich and Doyle failed to investigate and offer the testimony of the guards at the 1984 sentencing hearing. After reviewing the precedent of this court, I conclude that, absent a radical departure from our previous holdings, we cannot do so in this case.

This court has long recognized that the Act provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Eddmonds*, 143 Ill. 2d 501, 510 (1991) (and cases cited therein). As such, a proceeding under the Act is not an appeal *per se* but, rather, a collateral attack on a final judgment. *People v. Ruiz*, 132 Ill. 2d 1, 9 (1989). Thus, where a petitioner has previously taken a direct appeal from a judgment of conviction, the ensuing judgment of the reviewing court will bar, under the doctrine of *res judicata*, post-conviction review of all issues actually decided by the court, and any other claims that could have been presented to the reviewing court will be deemed waived. *People v. Neal*, 142 Ill. 2d 140, 146 (1990). Moreover, section 122—3 of the Act specifically states that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122—3 (West 1992). Accordingly, this court has held, consistent with its own precedent and the statutory language of the Act, that a ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition. *People v. Free*, 122 Ill. 2d 367, 376 (1988).

Nevertheless, this court has not deemed section 122—3 to be an ironclad bar on multiple post-conviction petitions and has, in the past, allowed successive filings when the proceedings on the original petitions were said

to be deficient in some fundamental way. See, *e.g.*, *People v. Nichols*, 51 Ill. 2d 244, 246 (1972); *People v. Hollins*, 51 Ill. 2d 68, 70 (1972); *People v. Slaughter*, 39 Ill. 2d 278 (1968). I note that Justice Harrison's dissent posits that "[t]he criteria for establishing that the first proceeding was deficient is not set forth with any precision in our case law" (186 Ill. 2d at 46 (Harrison, J., dissenting)); however, this is, in fact, not an entirely accurate statement. In *Flores*, this court undertook a thorough examination of the various situations in which a defendant will attempt to bring a successive petition. After reviewing our precedent and the language of the Act, we held without dissent that

> "[t]he Act does not *** provide a forum to test the propriety of conduct at an earlier post-conviction proceeding. Thus, where a petitioner files a second or subsequent post-conviction petition wherein he claims ineffective assistance in his first post-conviction proceeding, consideration of those claims is beyond the scope of the Act." *Flores*, 153 Ill. 2d at 277.

In so holding, we necessarily overruled, *sub silentio*, *People v. Hollins*, 51 Ill. 2d 68, 70 (1972), and *People v. Slaughter*, 39 Ill. 2d 278 (1968), at least to the extent that those cases suggest that inadequate representation at the prior proceeding—standing alone—constitutes a fundamental deficiency. Implicit in our holding in *Flores* is the recognition that the "fundamental deficiency" alleged to have occurred in the prior proceeding must flow from something other than the purported ineptitude or inadequacy of the prior post-conviction attorney. To hold otherwise would allow the fundamental-deficiency exception to *res judicata* to swallow the general proscription against the use of successive petitions to assail the conduct of post-conviction counsel. In addition, although we acknowledged in *Flores* that concerns of "fundamental fairness" colored the inquiry into whether a first post-conviction proceeding was fundamentally deficient, we

also specifically spoke to a " 'cause and prejudice' " evaluation to be applied in such circumstances. See *Flores*, 153 Ill. 2d at 279; *People v. Whitehead*, 169 Ill. 2d 355, 407 (1996) (Miller, J., specially concurring). We further recognized that, even in the absence of cause and prejudice, a court may, "nonetheless, entertain successive claims if necessary to prevent a fundamental miscarriage of justice." *Flores*, 153 Ill. 2d at 279. I note that the United States Supreme Court has stated that this latter exception serves "as 'an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty' [citation], guaranteeing that the ends of justice will be served in full." *McCleskey v. Zant*, 499 U.S. 467, 495, 113 L. Ed. 2d 517, 546-47, 111 S. Ct. 1454, 1471 (1991). In acknowledging these standards, we attempted in *Flores* to formulate objective guidelines to which the lower courts could turn in determining what constitutes a fundamental deficiency in prior post-conviction proceedings.

In light of the guidelines recognized in *Flores*, I do not believe defendant's allegations warrant a finding that his first post-conviction proceeding was deficient in some fundamental way. I must point out that this is not a case in which defendant's first post-conviction petition was cursorily dismissed by the circuit court without an evidentiary hearing. Rather, defendant was allowed to litigate his claims in an evidentiary hearing. Defendant thus received an unrestricted opportunity during his first post-conviction proceeding to develop his claim of ineffective assistance of counsel. Defendant's second petition alleges that Morrissey "had no strategic reason" for failing to present the evidence of the correctional officers. Moreover, when the State countered that defendant's petition was devoid of the necessary allegations which would permit a successive filing, defendant responded—along the same lines contained in his petition—that Morrissey

44

provided him with "no representation whatsoever regarding the claims relating to the sentencing hearing." In essence, these allegations amount to nothing more than a challenge to the performance of his first post-conviction attorney. In my opinion, they do not establish "cause" for a finding of a fundamental deficiency in the prior proceeding as contemplated in *Flores*.[2] See also *Antone v. Dugger*, 465 U.S. 200, 79 L. Ed. 2d 147, 104 S. Ct. 962 (1984) (holding second successive *habeas corpus* petition improper despite argument that previous *habeas* counsel had inadequately and hastily prepared prior petition). Defendant's allegations lead only to the inescapable conclusion that this case presents this court with the very type of prior post-conviction proceeding that we, in *Flores*, specifically refused to recognize as "fundamentally deficient." See *Flores*, 153 Ill. 2d at 282 (holding such claims to be beyond the scope of the Act). As such, defendant's second request for post-conviction relief should have been denied by the circuit court on the grounds that it was barred by the doctrine of *res judicata*.

In my view, the fact that the circuit judge in this case failed to recognize defendant's second petition as an invalid successive filing does not mean that this court is

_____

[2]Cause, I note, has been defined as " ' "some objective factor external to the defense [that] impeded counsel's efforts" to raise the claim' in an earlier proceeding." *Flores*, 153 Ill. 2d at 279, quoting *McCleskey v. Zant*, 499 U.S. 467, 493, 113 L. Ed. 2d 517, 544, 111 S. Ct. 1454, 1470 (1991), quoting *Murray v. Carrier*, 477 U.S. 478, 488, 9 L. Ed. 2d 397, 408, 106 S. Ct. 2639, 2645 (1986). Moreover, the United States Supreme Court has identified objective factors that constitute cause to include " ' "interference by officials" ' that makes compliance with the State's procedural rule impracticable, and 'a showing that the factual or legal basis for a claim was not reasonably available to counsel.' [Citation.] In addition, constitutionally '[i]neffective assistance of counsel . . . is cause.' [Citation.] Attorney error short of ineffective assistance of counsel, however, does not constitute cause ***." *McClesky*, 499 U.S. at 493-94, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470.

required on appeal to follow suit. For this reason and the reasons set forth above, I concur in Part I of the majority's analysis.

JUSTICE HEIPLE joins in this special concurrence.

JUSTICE HARRISON, dissenting:

In 1991, this court rejected defendant's appeal from the trial court's denial of post-conviction relief. *People v. Szabo*, 144 Ill. 2d 525 (1991). Two years later, in *People v. Johnson*, 154 Ill. 2d 227 (1993), this court granted relief to a defendant asserting the exact same claim, *i.e.*, that his post-conviction counsel had violated his duty under Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)), by failing to substantiate the defendant's *pro se* petition alleging his capital sentencing counsel had been ineffective for failing to call certain named prison officials to testify in mitigation about his good prison conduct. Today, the majority, *sua sponte*, holds that defendant may not pursue a second post-conviction petition, stating: "That we did not order the same remedy in defendant Szabo's earlier appeal, decided before *Johnson*, does not mean that we must now permit defendant Szabo to proceed with a second post-conviction petition, which is based, in substance, on a challenge to the performance of his initial post-conviction lawyer." 186 Ill. 2d at 26. I cannot agree with this holding, particularly when defendant's life is at stake.

It is true that the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)) contemplates the filing of only one petition, and a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition. *People v. Caballero*, 179 Ill. 2d 205, 211 (1997); *People v. Flores*, 153 Ill. 2d 264, 273-74 (1992). The majority properly observes that successive post-conviction petitions raise two competing interests, "the State's

interest in providing a forum for the vindication of the petitioner's constitutional rights *** [and its] interest in the finality of criminal litigation and judgments." *Flores*, 153 Ill. 2d at 274. Generally, the operation of waiver and *res judicata* contribute to the finality of criminal litigation, but this court has acknowledged that, under certain circumstances, these procedural bars may be ineffectual in bringing about the finality which ordinarily follows direct appeal and the initial post-conviction proceeding. See *Flores*, 153 Ill. 2d at 275, citing *People v. Stewart*, 141 Ill. 2d 107 (1990). This court has therefore allowed successive filings when the proceedings in the original petition were deficient in some fundamental way. See, *e.g., People v. Hollins*, 51 Ill. 2d 68, 70 (1972) (appointed counsel on prior petition failed, in either the trial court or the supreme court, to amend the *pro se* petition so that petitioner's contentions could adequately be addressed); *People v. Slaughter*, 39 Ill. 2d 278 (1968) (inadequate representation on first petition where counsel merely repeated the conclusory allegations made in defendant's *pro se* petition).

Thus, the determination to be made in this case is whether defendant's initial post-conviction proceeding was deficient in some fundamental way. The criteria for establishing that the first proceeding was deficient are not set forth with any precision in our case law. See *Flores*, 153 Ill. 2d at 278-79 (noting that fundamental fairness concerns control the question); *Hollins*, 51 Ill. 2d at 70 (recognizing that justice and fundamental fairness will dictate relaxation of the bar); *Slaughter*, 39 Ill. 2d at 285 (holding that bar will be excused where defendant did not receive adequate representation during initial post-conviction proceeding). Indeed, the author of the majority opinion herein has stated that a successive petition is permissible when the initial proceeding is deficient and "defendant can demonstrate both cause for

his failure to present his claims in a timely manner and prejudice from the procedural default." *People v. Whitehead*, 169 Ill. 2d 355, 407 (1996) (Miller, J., specially concurring). As these cases make clear, the determination regarding the deficiency of the initial proceeding is not subject to bright line standards; rather, the court must undertake an individualized, fact-dependant analysis in order to decide the propriety of any successive petition.

In my opinion, the record in this case demonstrates that defendant's first post-conviction proceeding was deficient in that it did not provide an adequate hearing on defendant's *pro se* allegations concerning the existence of mitigating evidence from correctional officers. The record shows that defendant had, as early as 1987 in his post-conviction petition, identified by name the guards who allegedly would have been willing to testify as mitigation witnesses at his 1984 sentencing hearing, had counsel Bjekich and Doyle conducted an adequate investigation. Despite this fact, no action was ever taken by counsel Morrissey during the first post-conviction proceedings to present that evidence in any meaningful form to the circuit court. While defendant did all that could be expected of him to bring the alleged constitutional deprivation to the attention of the court in timely fashion, his claim went unheeded. To enforce the procedural bar under these circumstances would be to punish defendant for his failure to do something more to pursue this claim. However, I am at a loss to conceive of what more defendant himself could have done to have his claim addressed. As this court has stressed, the legislature provided for counsel to be appointed to represent post-conviction petitioners, "not to protect them from the prosecutorial forces of the State, but to shape their complaints into the proper legal form and to present those complaints to the court." *People v. Owens*, 139 Ill. 2d 351, 365 (1990). Through no fault of defendant,

his claim with respect to the guards' testimony was not adequately presented during the initial post-conviction proceeding. Thus, I believe that proceeding was fundamentally deficient and the time has now come for defendant's claim to be heard on the merits.

The majority suggests that this court's earlier decision affirming the denial of defendant's initial petition "would normally be sufficient to negate any suggestion that the defendant is now entitled to a second opportunity to establish a constitutional defect in the sentencing proceedings." 186 Ill. 2d at 24. Again, I find it significant that this defendant, acting *pro se*, timely presented this claim in 1987, providing the names of specific witnesses he believed would have proven his claim regarding resentencing counsel's ineffectiveness. This is not a case where a defendant has waited until the eleventh hour to debut a claim which could have been raised and addressed in previous proceedings. In those circumstances, the interests of finality provide a far more compelling reason to enforce the procedural bars which normally exist to preclude further review. While I recognize the salutary principles behind the operation of procedural bars in collateral attacks on criminal convictions, as well as the notions of finality that are at play in such proceedings, I believe that those interests must yield, under the particular facts in this case, to defendant's interest in vindicating his constitutional rights. See *Slaughter*, 39 Ill. 2d at 285 (this court has repeatedly held that the objective of finality must yield when fundamental fairness so requires).

An additional reason supports relaxation of the bar in this case. As the majority notes, the State does not renew before this court its contention that *res judicata* preludes defendant's second petition. The State's decision to abandon the argument on appeal seems to be a concession that defendant's initial post-conviction

proceeding was deficient at least with respect to this issue. Certainly the circuit court, by denying the State's motion to dismiss, found that a deficiency had existed in the initial proceedings so as to permit defendant's second petition to stand. Given the State's failure to press the point, there is even less reason for this court to enforce the procedural bar. Defendant's second post-conviction petition presented the circuit court with the opportunity to complete defendant's constitutional challenge, begun in 1987, to the effectiveness of his 1984 sentencing attorneys. Therefore, on a procedural level, I believe the circuit court correctly heard evidence regarding defendant's claim that Bjekich and Doyle provided ineffective assistance of counsel at sentencing by failing to investigate and call the correctional officials named in defendant's post-conviction petition.

I further dissent from the majority's conclusion that defendant did not establish that this failure on the part of Bjekich and Doyle amounted to ineffective assistance of counsel. "In the context of a death sentencing hearing, the defendant must prove that counsel's representation was deficient and that there is a reasonable probability that, but for counsel's deficient conduct, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *People v. Hampton*, 149 Ill. 2d 71, 109 (1992), citing *Strickland v. Washington*, 466 U.S. 668, 695, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2069 (1984). It is clear that counsel has a duty to investigate potential sources of mitigation evidence, or to have reason not to make such an investigation. *People v. Griffin*, 178 Ill. 2d 65, 86 (1997); *People v. Ruiz*, 132 Ill. 2d 1, 27 (1989). If mitigation exists, counsel has the duty to introduce it in support of the defendant. *Griffin*, 178 Ill. 2d at 86. As this court recently stated in *People v. Ruiz*, 177 Ill. 2d 368, 385-86 (1997):

"Where an adequate investigation has been conducted, the failure to present mitigating evidence does not itself establish that defense counsel was ineffective. *People v. Coleman*, 168 Ill. 2d 509, 535 (1995); *Perez*, 148 Ill. 2d at 186. 'An informed decision not to present certain mitigating evidence may represent a valid strategic choice, particularly where the evidence is potentially damaging. However, where counsel has neglected to conduct a proper investigation into mitigating circumstances, the failure to introduce mitigating evidence cannot be attributed to strategy.' *Coleman*, 168 Ill. 2d at 535; see also *Baxter v. Thomas*, 45 F.3d 1501, 1514 (11th Cir. 1995) (a 'strategic' decision cannot be reasonable when counsel has failed to investigate his options and make a reasonable choice between them). In such cases, counsel's performance falls below objective standards of reasonableness. [Citation.]"

In the instant case, defendant had served more than five years in custody for these charges prior to the resentencing hearing, and because his behavior during this period was exemplary, defense counsel had a unique opportunity to present the jury with this mitigation evidence in an attempt to preclude the imposition of the death penalty. Nevertheless, counsel made no attempt to investigate or present evidence of defendant's good conduct from disinterested sources readily available to them. Therefore, applying the above-stated precedent to the record herein, I would find the determination of the circuit court, that defense counsel had no duty to present the mitigating testimony of the five correctional officials, to be manifestly erroneous. See *People v. Perez*, 148 Ill. 2d 168, 194 (1992) (defendant satisfied first prong of *Strickland* by showing counsel's failure to investigate and present to sentencer defendant's mental history and his failure to investigate defendant's background with the information he possessed).

In presenting its findings and announcing its ruling, the circuit court agreed with defendant that the correctional officials were readily available as mitigation

witnesses, had counsel investigated to locate them. However, the court held that Bjekich had no duty to produce these witnesses because he had made a reasonable choice to rely on defendant's testimony instead. I believe that the record conclusively establishes that, contrary to Bjekich's testimony, the defense plan was to have defendant testify *only* if the motion *in limine* were granted. The majority refuses to disturb the circuit court's credibility determination on this matter. But regardless of whether the record refutes Bjekich's claim that he believed that defendant would testify at his resentencing hearing, Bjekich had no excuse for failing to investigate and present other independent evidence about defendant's good prison record.

Bjekich testified at the post-conviction hearing that one of the defense goals at resentencing was to show the jury that defendant had a good prison record, and Bjekich recognized the importance of this evidence, stating that at least one juror might be inclined to vote against the death penalty if it were shown that defendant could serve a prison sentence without hurting other people. While acknowledging that it would have been helpful to have correctional officials testify in defendant's behalf and despite possessing a copy of defendant's Department of Corrections records which could have led him to officials willing to corroborate the mitigating information the records contained, Bjekich admitted he did nothing.

Nor did Bjekich even attempt to introduce the Department of Corrections records to establish defendant's good behavior. Rather, Bjekich stated that his plan at resentencing was to rely on defendant's testimony about his conduct while in prison to "humanize" him and show he had not been a "troublemaker." However, Bjekich acknowledged that defendant's credibility would be severely impeached because he planned to contradict his previous testimony regarding his participation in the

murders. Additionally, as noted by the United States Supreme Court in *Skipper v. South Carolina*, 476 U.S. 1, 8, 90 L. Ed. 2d 1, 9, 106 S. Ct. 1669, 1673 (1986), the testimony of a defendant or his family members about his good conduct in jail is "the sort of evidence that a jury naturally would tend to discount as self-serving." Conversely, "[t]he testimony of more disinterested witnesses—and, in particular, of jailers who would have had no particular reason to be favorably predisposed toward one of their charges—would quite naturally be given much greater weight by the jury." *Skipper*, 476 U.S. at 8, 90 L. Ed. 2d at 9, 106 S. Ct. at 1673.

In my opinion, defense counsel's decision to forgo an investigation and rely solely on defendant's testimony was objectively unreasonable, as it was "neither the product of an informed judgment nor a strategic decision reached after weighing all available options." *People v. Madej*, 177 Ill. 2d 116, 136 (1997). Therefore, I would find that defendant satisfied the first prong of the *Strickland* test. See *Ruiz*, 177 Ill. 2d at 386-87 (defense counsel's failure to investigate and present mitigating evidence, which a thorough investigation of defendant's background would have revealed, could not be deemed a strategic decision and was representation which fell below objective standards of reasonableness). Further, I believe the circuit court correctly found that the second prong of the *Strickland* test was met, *i.e.*, that counsel's deficient performance so prejudiced the defense as to deny defendant a fair sentencing hearing.

"Mitigating evidence is extremely important under the Illinois capital sentencing scheme. Once an aggravating factor is found sufficient to impose the death penalty, there must be mitigating evidence sufficient to preclude the imposition of the death penalty." *Perez*, 148 Ill. 2d at 194. Here, strong mitigating evidence existed which defense counsel failed to investigate and introduce. The resulting prejudice to defendant is clear.

As the majority notes, in *Skipper*, the United States Supreme Court reversed a state court's ruling that correctional officials' testimony as to a defendant's good conduct was irrelevant and inadmissible, holding that a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is an aspect of his character that is by its nature relevant to the sentencing determination in a capital case. The Court found that the defendant was therefore deprived of his right to place before the sentencer relevant evidence in mitigation of punishment, stating:

> "[T]he jury could have drawn favorable inferences from this testimony regarding [the defendant's] character and his probable future conduct if sentenced to life in prison. *** [T]here is no question but that such inferences would be 'mitigating' in the sense that they might serve 'as a basis for a sentence less than death.' [Citation.]" *Skipper*, 476 U.S. at 4-5, 90 L. Ed. 2d at 6-7, 106 S. Ct. at 1671.

The Court concluded that "under any standard, the exclusion of the evidence was sufficiently prejudicial to constitute reversible error." *Skipper*, 476 U.S. at 8, 90 L. Ed. 2d at 9, 106 S. Ct. at 1673.

While we are dealing herein with counsel's ineffectiveness rather than a trial court's erroneous ruling as the reason for the absence of the mitigation evidence, I believe the *Skipper* Court's holding that the error is prejudicial "under any standard" of review demonstrates that counsel's failure to present this evidence meets the prejudice prong of *Strickland*. See also *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir. 1989) (failure to introduce character witnesses constituted ineffective assistance at capital sentencing hearing, particularly where at least one of the 15 available character witnesses was a deputy sheriff). This failure raises a serious doubt as to the reliability of defendant's resentencing. See *Ruiz*, 177 Ill. 2d at 387-88; *Perez*, 148 Ill. 2d at 194-95. Here, as in *Kubat*, 867 F. 2d at 369 "[t]he introduction of testimony by a

law enforcement officer that the defendant had a salvage-able character might not have gone totally unnoticed by the jury."

Thus, I concur with the following findings made by the circuit court at defendant's evidentiary hearing:

"The essence of the [post-conviction] allegation is that the defense had an almost unique opportunity to bring a number of disinterested witnesses to testify that [defendant's] conduct in the penitentiary, the Department of Corrections, was without violence, without threats, and that he would be able to function in that kind of a structured society without the necessity for society killing him.

* * *

The affidavits submitted by [defendant], in fact, showed that those people were out there and they were available, and the testimony of those people, who aren't related to him, usually has a lot more impact with a jury than the testimony of relatives. There is a significant basis to believe in this case that had that testimony been in this record, one juror might have been convinced that while [defendant] may have deserved to die for what he did, he didn't need to die."

Stated another way, there is a reasonable probability that had the jury known of the evidence defense counsel failed to investigate and present, the jury "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

I therefore conclude that defendant was deprived of the effective assistance of counsel at his capital resentencing hearing and I would accordingly reverse the judgment of the circuit court denying post-conviction relief. Defendant's death sentence should be vacated and this cause remanded to the circuit court for resentencing. Because Illinois' death penalty law is unconstitutional (*People v. Bull*, 185 Ill. 2d 179 (1998) (Harrison, J., dissenting)), the circuit court should be directed to impose a sentence other than death.

JUSTICE McMORROW, also dissenting:

Except as herein noted, I join in the dissenting opinion filed by Justice Harrison. I dissent from Justice Harrison's proffered disposition of this case. In my view, this cause should be remanded to the circuit court for a new unrestricted sentencing hearing.

JUSTICE NICKELS, also dissenting:

I join in that portion of Justice Harrison's dissent which would hold that defendant's death sentence should be vacated. I do not join that part of the dissent which reads: "Because Illinois' death penalty law is unconstitutional [citation], the circuit court should be directed to impose a sentence other than death." I believe that this cause should be remanded to the circuit court for a new sentencing hearing.