NOTICE

Decision filed 09/05/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220639-U

NO. 5-22-0639

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 16-CF-337 |
| | ) | |
| KINZIE L. SCHWAB, | ) | Honorable |
| | ) | Jason M. Bohm, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where defendant established neither cause for failing to raise the issues earlier nor prejudice from the failure to do so, the circuit court properly denied leave to file a successive postconviction petition. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Kinzie L. Schwab, appeals the circuit court's order denying leave to file a successive postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that the circuit court erred in so doing. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion. This court has provided him with ample opportunity to respond, but he has not done so. After considering the record on appeal and OSAD's memorandum and

1

supporting brief, we agree that this appeal presents no reasonably meritorious issues.  Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                          BACKGROUND

¶ 4      Defendant was charged with criminal sexual assault and possession of child pornography involving his 16-year-old stepdaughter, D.H.  Despite being warned of the necessity of appearing at trial and being aware of the trial date, defendant did not appear at trial.  D.H. testified that she got a computer for her eleventh birthday.  She posted photographs on a social media website and started to get comments related to defendant.  Specifically, she began exchanging emails with someone named "Alex."  The people with whom she communicated online soon began threatening D.H., her mother, and her sisters.

¶ 5      The people with whom she was communicating began suggesting that she engage in sexual activities with defendant, such as kissing or flirting.  They threatened to hurt D.H.'s family if she told anyone about these communications.  She began to suspect that defendant was sending the messages because the sender knew immediately what she was doing.  At some point, when she was in the sixth grade, she received a message telling her to "go downstairs and hang out."  When she did, defendant "came on" to her.

¶ 6      D.H. continued to receive messages from 2011 through 2015, and defendant continued to attempt to get physical with her during that time.  She received messages suggesting that "if you just do this, then we'll stop bothering you, we won't hurt your mom, we'll leave your sisters alone."  She felt overwhelmed, wanted the messages to stop, and decided to go ahead with the requests.

¶ 7      In 2015, defendant mentioned the idea of engaging in sexual intercourse and suggested he and D.H. do "something more than what's already being done."  Between April and June 2015, defendant and D.H. went to hotels in Champaign.  Defendant put his penis in her vagina on at least

2

two occasions. He possibly did so a third time, but he had gotten her drunk and she could not remember clearly. Defendant recorded one such encounter on his cell phone and the recording was played for the jury. According to an officer who interviewed defendant, he maintained that the female in the video was a woman named Lindsay Hall.

¶ 8 During deliberations, the jury sent out a note asking for a screenshot from the video. The court and the attorneys agreed that this was not possible, as it would be creating evidence that was never admitted and, thus, lacked foundation. The court, with the parties' consent, instructed the jury to continue its deliberations.

¶ 9 A short time later, the jury sent out another note asking to review a portion of the video. Although the prosecutor was willing to replay the video, defense counsel stated, "I would object to that, and I don't [know] if we actually have power to play the video, Judge." The court noted that the lights were out in the courtroom except for emergency lighting. The court ruled, "we're not going to play the video again, not because of the power but I don't think it's appropriate." Defense counsel responded, "Thank you, Judge," and the court instructed the jury to continue deliberating.

¶ 10 The jury found defendant guilty. The court sentenced him to consecutive terms of 10- and 15-years' imprisonment.

¶ 11 On direct appeal, defendant argued that the trial court erred by admitting motel registration documents as business records and that trial counsel was ineffective for failing to preserve the issue. The Fourth District rejected these claims and affirmed. *People v. Schwab*, 2019 IL App (4th) 160742-U.

¶ 12 Defendant, through private counsel, then filed a postconviction petition. As relevant here, he contended that trial counsel was ineffective for failing to investigate and present evidence that

3

defendant and his wife were "swingers," and that the woman in the video was not D.H., but a consenting adult. The petition included defendant's affidavit averring that his wife, Dawnyell, recorded the video in the hotel using her cell phone. Also attached was defendant's father's affidavit stating that, D.H. "has specific tattoos and birthmarks that could have been detected" on the video.

¶ 13    The court granted the State's motion to dismiss the petition. The court noted, among other things, that the video clearly showed defendant starting the recording and setting the phone down. The court further noted "that there were only two people in the room at the time the video was taken: D.H. and [defendant]."

¶ 14    On appeal, defendant argued that postconviction counsel failed to support the petition's ineffective assistance claims with sufficient evidence. He further contended that postconviction counsel failed to include in the petition two potentially meritorious claims: that direct-appeal counsel did not raise claims that the trial court erred by denying the jury's request to review the video and trial counsel did not challenge the improper admission of other-crimes evidence. Counsel conceded that these latter claims were not properly before the court but included them to " 'provide further context to his claim that [postconviction] counsel provided unreasonable assistance.' " *People v. Schwab*, 2022 IL App (4th) 200419-U, ¶ 40. The Fourth District refused to consider the newly added claims, rejected the remaining claims, and affirmed the dismissal.[1] *Id.*

¶ 15    Defendant, *pro se*, sought leave to file a successive petition raising variations of the claims that the Fourth District refused to consider in the previous appeal: that trial, direct-appeal, and

_____

[1]Issues not raised in a dismissed postconviction petition cannot be raised for the first time on appeal from that dismissal. *People v. Jones*, 213 Ill. 2d 498, 507 (2004).

postconviction counsel were ineffective for not arguing that the jury heard inadmissible other-crimes evidence and that the court improperly denied the jury's request to review the video during deliberations. The court denied the motion and defendant appeals.

¶ 16                                    ANALYSIS

¶ 17    OSAD concludes that no reasonably meritorious argument exists that the court erred in denying defendant leave to file a successive petition. OSAD concludes that defendant can establish neither cause for nor prejudice from failing to raise the claim earlier.

¶ 18    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). The Act contemplates the filing of only one petition and provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2020); *People v. Bailey*, 2017 IL 121450, ¶ 15. To file a successive petition, a defendant must obtain leave of court, which may be granted where the defendant demonstrates cause for his or her failure to bring the claim in the initial postconviction proceeding and prejudice results from that failure. 725 ILCS 5/122-1(f) (West 2020). "Cause" in this context refers to any objective factor, *external to the defense*, which impeded the ability to raise a specific claim in the initial postconviction proceeding. *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002).

¶ 19    OSAD concludes that defendant cannot establish prejudice because both claims involve trial errors and the factual predicate for these claims appears in the trial transcript. Thus, they could have been raised in the first postconviction petition, which was filed by retained counsel.

¶ 20 As noted, the supreme court has defined "cause" as a factor *external to the defense* that impedes bringing a claim. *Id.* Postconviction counsel's failure to include an issue is not a factor external to the defense. Accordingly, a successive postconviction petition "does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier post-conviction proceeding." *People v. Szabo*, 186 Ill. 2d 19, 26 (1998) (citing *People v. Flores*, 153 Ill. 2d 264, 276-77 (1992)). Thus, defendant cannot establish cause merely by showing that counsel failed to include the issue in the initial petition.

¶ 21 Apparently anticipating this objection, defendant argued in his motion that the court's ruling impeded the ability to raise the claim there. When postconviction counsel originally filed the petition in November 2019, he noted that he had not read the complete record, portions of which were sealed. He anticipated filing an amended petition after seeing the complete record. However, the circuit court, instead of granting additional time to amend the petition, entered a briefing order requiring the State to respond by January 17, 2020. According to defendant, the court did not release the record to defense counsel until February 2020. Nonetheless, in March 2020, counsel filed an amended Rule 651(c) certificate (see Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) averring that he had read the record and "made any amendments to Defendant-Petitioner's Post-Conviction Petition necessary for adequate presentation of Defendant-Petitioner's contentions."

¶ 22 Defendant apparently concludes from this that the circuit court set a needlessly tight schedule that ultimately dissuaded postconviction counsel from thoroughly reviewing the record and amending the petition. We disagree. The proper conclusion is that counsel reviewed the record, which, by defendant's admission, he received a month earlier, and made a reasoned decision that amending the petition to include the additional claims was not warranted. See *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19 (filing of a Rule 651(c) certificate gives rise to a

6

rebuttable presumption that postconviction counsel provided reasonable assistance). And, as noted, postconviction counsel's discretionary failure to include claims in a petition does not provide cause for filing a successive petition. *Szabo*, 186 Ill. 2d at 26.

¶ 23 In any event, even if defendant could establish cause, he cannot establish prejudice as both claims lack merit. Defendant's first claim proceeds from the premise that D.H.'s testimony presented the jury with evidence of other crimes that defendant committed. D.H. testified that "Alex," who she assumed was defendant, threatened her and her family to coerce her into a sexual relationship. She said that defendant eventually mentioned the idea of having intercourse, suggesting that they do "something more than what's already being done," which implied that they had previously engaged in some sort of sexual conduct. D.H. also testified that she and defendant had sex at least twice and possibly three times. Defendant contended that trial counsel should have objected to this "other-crimes" evidence and that appellate counsel and postconviction counsel should have raised the issue.

¶ 24 Evidence of other crimes is not admissible merely to show a defendant's propensity to commit crimes. *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980). However, when evidence of another crime is relevant, that evidence may be introduced for any purpose other than to show the defendant's propensity to commit criminal acts. *People v. Illgen*, 145 Ill. 2d 353, 365 (1991). Other-crimes evidence is admissible when relevant to establish *modus operandi*, intent, identity, motive, or absence of mistake. *Id.* at 364-65. Moreover, evidence of other crimes is admissible when it is "part of a continuing narrative of the event giving rise to the offense," is intertwined with the charged event, or explains a part of the crime that would otherwise be implausible. (Internal quotation marks omitted.) *People v. Sanders*, 2012 IL App (1st) 102933-U, ¶ 16 (citing

*People v. Hale*, 2012 IL App (1st) 103537, ¶ 14 (evidence of another crime may be admitted when, *inter alia*, the other crime sets the stage for the charged offense)).

¶ 25    Indeed, where such evidence is part of the course of conduct or a continuing narrative of the charged offense, it is not really other-crimes evidence at all but is evidence tending to prove the crime with which the defendant is charged. Thus, ordinary principles of relevancy apply and the rules applicable to other-crimes evidence are not implicated. *People v. Saulsberry*, 2021 IL App (2d) 181027, ¶ 50.

¶ 26    Here, to the extent that D.H.'s testimony implied that defendant committed other offenses, they were part of the course of conduct leading to the offenses for which he was on trial. It was not evidence of separate offenses for which he had already been tried and convicted. Thus, counsel was not ineffective for failing to object to this evidence.

¶ 27    Defendant's second contention was that the trial court erred in not allowing the jury to see the video again and that trial counsel was ineffective for failing to object to its decision. " 'To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)). To succeed on an ineffective-assistance claim, a defendant must overcome a "strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *People v. Coleman*, 183 Ill. 2d 366, 397 (1998).

¶ 28    A trial court has the discretion to allow or refuse a jury's request to review trial evidence. *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 32. We will not disturb the court's decision unless the court abused its discretion. *Id.*

¶ 29    Here, when the prosecutor suggested that it would be possible to play the video again, defense counsel objected. But the only stated reason was that the courtroom was without power. See *People v. Steidl*, 142 Ill. 2d 204, 230 (1991) (objection on specific grounds forfeits other grounds not specified). When the court said that it would deny the request to replay the video for reasons unrelated to the power outage, counsel acquiesced in the court's ruling. Thus, we presume that counsel's decision not to renew his objection was a strategic one. *Coleman*, 183 Ill. 2d at 397.

¶ 30    Further, such a strategy was sound. Initially, it is pure speculation to suggest that the jurors' seeing the video again would have led them to acquit defendant. It is at least equally as likely that seeing the video a second time would have reinforced the jury's conclusion that it was indeed D.H. shown on the video.

¶ 31    The State introduced the video. It was integral to proving the sexual assault charge and was the basis of the child pornography charge. The jury saw D.H. testify and was thus uniquely qualified to decide whether she was the female shown in the video. Given that the jury ultimately convicted defendant, it apparently concluded that she was. In dismissing defendant's first postconviction petition, the trial judge unequivocally stated that D.H. was the other person shown in the video. Under those circumstances, defense counsel could reasonably conclude that showing a key piece of the State's evidence to the jury a second time would not have helped the defense.

¶ 32    Finally, OSAD argues that there is no meritorious argument that the State participated in the decision whether to grant leave to file. The State should not participate at the cause and prejudice stage of successive postconviction proceedings. *People v. Bailey*, 2017 IL 121450, ¶ 24. Here, the State did not file any written pleadings in response to defendant's motion and, prior to the court's ruling, there were no scheduled court proceedings at which the prosecutor could have

9

stated his position. Thus, the record would not support an argument that the State participated in that stage of the proceedings.

¶ 33                                        CONCLUSION

¶ 34    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 35    Motion granted; judgment affirmed.