NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241192-U

NO. 4-24-1192

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 4, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| JOHNNY M. RUFFIN, | ) | No. 99CF2060 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ronald J. White |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's order denying defendant leave to file
a successive postconviction petition, holding (1) defendant's motion for leave to
file a late appeal was timely filed, allowing the appellate court to gain jurisdiction
over the appeal and (2) defendant could not show cause for leave to file a
successive petition to challenge the conduct of appellate postconviction counsel
during an earlier postconviction proceeding.

¶ 2    Following a jury trial, defendant, Johnny M. Ruffin, was convicted of one count

of second degree murder (720 ILCS 5/9-2 (West 1998)) for killing Brad Plaza and two counts of

aggravated battery with a firearm (*id.* § 5/12-4.2(a)(1)) for shooting Michael Vella and

Christopher Cummings. We affirmed defendant's convictions and sentences on direct appeal.

*People v. Ruffin*, No. 2-00-0336 (2001) (unpublished order under Illinois Supreme Court Rule

23).

¶ 3    Defendant later filed a third amended petition under the Post-Conviction Hearing

Act (Act) (725 ILCS 122-1 *et seq.* (West 2014)), alleging, in part, his trial counsel rendered ineffective assistance by failing to inform him of his right to tender a jury instruction on reckless conduct as a lesser-included offense of aggravated battery with a firearm. He also alleged the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory evidence that Cummings was previously charged with misdemeanor battery. After a third-stage evidentiary hearing, the trial court granted a new trial based on the alleged *Brady* violation and denied relief on the remaining issues. The State appealed, and the appellate court reversed. *People v. Ruffin*, 2018 IL App (2d) 170324-U, ¶ 34. Defendant's postconviction counsel did not raise any issues concerning the jury instructions on appeal.

¶ 4        In January 2024, defendant filed a *pro se* motion for leave to file a successive postconviction petition, alleging, in part, postconviction counsel rendered ineffective assistance by failing to file a cross-appeal regarding the trial court's denial of his claim of ineffective assistance of trial counsel based on the failure to inform defendant of his right to tender a jury instruction on reckless conduct. The court denied leave to file the successive petition.

¶ 5        On appeal, defendant argues he established cause and prejudice to file the successive postconviction petition because he established (1) unreasonable assistance of postconviction counsel based on counsel's failure to raise the issue of ineffective assistance of trial counsel in the State's appeal and (2) ineffective assistance of trial counsel based on counsel's failure to inform him of his right to a reckless conduct instruction.

¶ 6        We find the postconviction process does not provide a forum by which defendant may challenge the conduct of counsel at an earlier postconviction proceeding. Regarding the claim of ineffective assistance of trial counsel, it is *res judicata*. Further, even if we were authorized to address defendant's claims, they lack merit because defendant could not show

prejudice. Accordingly, we affirm.

¶ 7                                    I. BACKGROUND

¶ 8        In July 1999, defendant was charged with four counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 1998)) and two counts of aggravated battery with a firearm (*id.* § 12-4.2(a)). In early 2000, a jury trial was held. Defendant was represented at trial by attorneys Edward Light and Gary Pumilia.

¶ 9        The evidence at trial showed that, on June 26, 1999, defendant became involved in an altercation among a group of people. During the altercation, defendant shot and killed Plaza. Defendant also shot and injured Cummings and Vella. Defendant testified he ran away from the group but shot Plaza twice after a group of six or seven people came close to him and he believed they were going to grab his gun and shoot him. Defendant said he fired five more shots into the ground because he did not want to hurt anyone.

¶ 10       After shooting the victims, defendant stole a vehicle at gunpoint. The police engaged in a high-speed pursuit, which resulted in defendant crashing the car. Defendant pointed his gun at the police, who shot defendant in response.

¶ 11       Defendant's trial counsel asserted self-defense and tendered jury instructions on self-defense and second degree murder as a lesser mitigated offense of first degree murder (*id.* § 9-2). Counsel did not request instructions on any lesser-included offenses of aggravated battery with a firearm. During the jury instruction conference, defendant said he had "some dissatisfaction" with his trial counsel. He indicated he did not fully agree with their position regarding two instructions not at issue in this appeal. Defendant stated he agreed with the decision to tender the second degree murder instruction. The trial court gave that instruction to the jury.

¶ 12        The jury found defendant guilty of one count of second degree murder for killing

Plaza and two counts of aggravated battery with a firearm for shooting Vella and Cummings.

The trial court sentenced defendant to consecutive terms of 25 years' imprisonment for each of

the two counts of aggravated battery and 19 years' imprisonment for second degree murder.

Defendant appealed but did not raise any issues concerning his trial counsel's decision not to

tender an instruction on reckless conduct as a lesser-included offense of aggravated battery with

a firearm. The appellate court affirmed. *Ruffin*, No. 2-00-0336 (2001) (unpublished order under

Illinois Supreme Court Rule 23).

¶ 13        In February 2002, defendant filed a *pro se* postconviction petition, alleging

multiple issues, including a claim of ineffective assistance of trial counsel based on counsel's

failure to tender a jury instruction on reckless conduct. Defendant alleged counsel incorrectly

told him there were no lesser-included offenses of aggravated battery with a firearm, which

caused him to involuntarily forfeit his right to tender a reckless conduct instruction. He argued

such an instruction was warranted because the evidence showed he did not intentionally fire

shots at Vella and Cummings and instead fired the shots that hit them into the ground.

¶ 14        At the second stage of the postconviction proceedings, the trial court granted the

State's motion to dismiss the petition. Defendant appealed, arguing (1) unreasonable assistance

of postconviction counsel when counsel did not make any amendments to the *pro se* petition and

(2) ineffective assistance of trial counsel when counsel did not inform defendant of his right to

request a jury instruction on reckless conduct.

¶ 15        The appellate court reversed and remanded, finding postconviction counsel

rendered unreasonable assistance by failing to make any amendments to the petition necessary

for the adequate presentation of defendant's claims. *People v. Ruffin*, No. 2-04-1051 (2006)

(unpublished order under Illinois Supreme Court Rule 23). The court did not specifically address the issue of defendant's right to request a jury instruction on reckless conduct.

¶ 16        In March 2014, defendant, through privately retained attorneys Nishay Sanan and Stephen Hall, filed a third amended petition under the Act, again alleging, in part, his trial counsel rendered ineffective assistance by failing to inform him of his right to tender a jury instruction on reckless conduct as a lesser-included offense of aggravated battery with a firearm. Defendant also alleged the State violated *Brady* by failing to disclose exculpatory evidence that Cummings was previously charged with misdemeanor battery.

¶ 17        The matter proceeded to a third-stage evidentiary hearing. At the time of the hearing, Light had passed away. Pumilia testified regarding the issues at trial. When asked if self-defense was raised in the case, Pumilia responded, "That was the defense." On another occasion, Pumilia stated "As you can see from the trial, the defense was self-defense. That was the main thrust of our case." Pumilia stated the murder charge was their main concern and they also took the other charges into consideration. On another occasion, the following colloquy occurred:

> "Q: Sir, as a defense attorney currently and in the past, do you think it's important for a defense to have a single defense or consistent defenses, can you explain?
>
> A. It is most difficult for a defendant to get up and say I acted in self-defense, I was protecting myself when I fired the gun, and then to say something that's contradictory to that.
>
> When *** you split your defense like that, you weaken your credibility so much I can't even explain how much, but you lose your credibility, and credibility

- 5 -

is what convinces the jury to go for you or against you.

* * *

Q. In regards to this case, would you have concerns if you presented alternative defenses?

A. In this case, and this is representative of a lot of situations, but in this case specifically a split defense would have hurt [defendant's] credibility on the witness stand so much that I don't think he would have gotten the second degree.

I mean you can't get up and say I did this for this reason, but I could have done something over here for a different reason. In this case you have to maintain [a] consistent, focussed [*sic*] defense from your first questions to the jury on through the time when the state sits down in rebuttal argument. You can't do a shotgun approach if you want to win.

Q. Is it fair so say that in this matter during trial your defense was self-defense?

A. Absolutely. That was the defense. That's what [defendant] testified to.

Q. Next I want to ask you about reckless conduct.

Are you familiar with the charge of reckless conduct?

A. Yes.

Q. Did you ever discuss, would you recall if you discussed reckless conduct with defendant?

A. We discussed all the alternatives, and I know we discussed reckless conduct with him, just like we discussed second degree murder and what can happen if he is convicted of first degree murder."

¶ 18    When asked for his opinion about whether to argue defendant engaged in reckless conduct against Plaza, Pumilia stated:

"Here's the problem. The first thing you want, first thing we wanted was not guilties all the way around. That's what we were going for.

The way we get a not guilty is the state either fails to prove one of the elements or we go in with self-defense, and the jury accepts the self-defense theory of the case.

This was something that happened very quickly. There was no spot by any of the testimony that I recall where [defendant] had the ability to move from a mindset where he had I'm defending myself, these people are coming at me, there's seven of them or I think that was the testimony, about seven people coming at me, I'm in fear for my life, they're going to hurt me.

There was no point in the testimony where he could change from that mind set to another mindset, and we're constrained by what the facts the defendant gives us. He says I was acting in self-defense."

¶ 19    When asked about reckless conduct regarding Vella and Cummings, Pumilia repeated the same sentiment that arguing reckless conduct would harm defendant's credibility. He repeated that arguing reckless conduct would weaken the theory of self-defense and said they could argue reckless conduct, but "it's very, very poor trial strategy." The following colloquy then occurred:

"Q. Now, if defendant would have wanted you and Mr. Light to submit a reckless conduct jury instruction, would you have done that?

A. If he would have said I want you to submit a reckless conduct, I would

- 7 -

have done it. I probably wouldn't have argued it, but I would have submitted the instruction.

Q. Why wouldn't you have argued it?

A. Because my belief was and is you got up and said he's not guilty, folks, he was acting in self-defense at the beginning, he was acting in self-defense at the end, and I wasn't gonna let anything interfere with that because those were the facts as we were informed. That's what came out at trial, at least my belief.

Q. In your opinion do you think that self-defense and reckless conduct are mutually exclusive?

A. Legally, no; practically, yes.

Q. Can you explain what you mean, 'practically, yes'?

A. I thought I just had. It's a different mind set, you're not defending yourself.

Q. Did you ever tell defendant that there's no lesser included defenses for aggravated battery with a firearm?

A. There's lots of lesser included offenses of any aggravated battery, but no, we wouldn't have told him that, did not tell him that."

¶ 20　　　Pumilia later testified he did not think the facts supporting a reckless conduct instruction would have convinced the jury. Pumilia repeated defendant was facing seven people, and he stated the defense was defendant's "intent from beginning to end was to defend himself."

¶ 21　　　Defendant testified he never intended to shoot anyone when he shot into the ground. According to defendant, trial counsel should have tendered a reckless conduct instruction. Defendant testified he discussed the instructions with Light and stated:

- 8 -

"Then when I asked him specifically about, okay, what about the aggravated battery with a firearm offense, and they, basically, told me that there *** was no option in the statute. That's *** what I took from it, like there no option in the statute that could be tendered to that."

¶ 22 Defendant testified Light told him if he was found guilty of second degree murder and aggravated battery, Light would file a motion to find the aggravated battery conviction unconstitutional based on a disproportionate penalty because the aggravated battery conviction would be subject to a longer prison term than the second degree murder conviction. Light did file such a motion after trial.

¶ 23 The trial court granted a new trial based on the alleged *Brady* violation and denied relief on the remaining issues. Regarding the lack of a reckless conduct instruction, the court cited a case in which the defendant was entitled to a reckless conduct instruction when the defendant requested it (see *People v. Roberts*, 256 Ill. App. 3d 400, 402-03 (1994)). The court then stated that case was "different than what we have here." The court stated defense counsel made the decision not to request a reckless conduct instruction based on trial strategy and stated, "I won't grant a new trial because of the fact that a reckless conduct instruction was never given, it was never requested."

¶ 24 The State appealed, and the appellate court reversed. *Ruffin*, 2018 IL App (2d) 170324-U, ¶ 34. Sanan and Hall represented defendant on appeal and did not raise any issues concerning the jury instructions.

¶ 25 In January 2024, defendant filed a *pro se* motion for leave to file a successive postconviction petition, alleging, in part, postconviction counsel rendered ineffective assistance by failing to file a cross-appeal regarding the trial court's denial of his claim of ineffective

assistance of trial counsel based on the failure to inform defendant of his right to tender a jury instruction on reckless conduct. He also alleged ineffective assistance of trial counsel based on that failure.

¶ 26        On July 10, 2024, the trial court denied leave to file the successive petition. In doing so, the court noted the various appellate court decisions in the case. The court stated defendant had not shown cause and prejudice supporting leave to file the petition because defendant did not identify any objective factor that impeded his ability to raise a specific claim during the first proceeding or show an unraised claim sufficiently affected the trial. The court then stated, "In looking at the appellate decision, the defendant could have raised up these issues at the second court appellate level."

¶ 27        On September 24, 2024, defendant filed a motion for leave to file a late notice of appeal. In his motion, defendant stated he was incarcerated and the clerk of trial court had mailed the court's order to the wrong person at another correctional center. Defendant stated he mailed letters inquiring about the status of his case and did not discover his request to file a successive petition had been denied until August 23, 2024. Defendant included a certificate of service with a sworn statement that he placed his motion in the institutional mail on August 28, 2024. We granted the motion for leave to file a late appeal. Defendant's counsel later filed another motion for leave to file a late notice appeal and included an affidavit showing grounds for allowing the motion. We also granted that motion.

¶ 28        This appeal followed.

¶ 29                                II. ANALYSIS

¶ 30        On appeal, defendant argues he established cause and prejudice to file the successive postconviction petition because he established (1) unreasonable assistance of

postconviction counsel based on counsel's failure to raise the issue of ineffective assistance of trial counsel in the State's appeal and (2) ineffective assistance of trial counsel based on counsel's failure to inform him of his right to a reckless conduct instruction.

¶ 31 In response, the State argues (1) this court lacks jurisdiction over the appeal, (2) defendant forfeited the matter by raising ineffective assistance of counsel in his petition but arguing unreasonable assistance on appeal, (3) defendant's claim of ineffective or unreasonable assistance of postconviction counsel is not cognizable under the Act, and (4) defendant could not show cause and prejudice because (a) postconviction counsel lacked authority to file a cross-appeal and (b) the record shows defendant's underlying claim lacks merit.

¶ 32 A. Jurisdiction

¶ 33 We first address the State's contention this court lacks jurisdiction. The State argues the motion for leave to file the late notice of appeal was untimely. We disagree.

¶ 34 The timely filing of a notice of appeal is necessary for an appellate court to have jurisdiction over a criminal matter. *People v. Blanchette*, 182 Ill. App. 3d 396, 398 (1989). To be timely, the notice of appeal must be filed with the trial court within 30 days of a final judgment. Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024). A notice of appeal mailed within the 30-day period is considered timely filed. *Blanchette*, 182 Ill. App. 3d at 399. Under certain circumstances, Illinois Supreme Court Rule 606(c) (eff. Apr. 15, 2024) permits a reviewing court to extend the time for filing the notice of appeal. That rule provides:

"[O]n motion supported by a showing of reasonable excuse for failing to file a notice of appeal on time filed in the reviewing court within 30 days of the expiration of the time for filing the notice of appeal, or on motion supported by a showing by affidavit that there is merit to the appeal and that the failure to file a

- 11 -

notice of appeal on time was not due to appellant's culpable negligence, filed in the reviewing court within six months of the expiration of the time for filing the notice of appeal, in either case accompanied by the proposed notice of appeal, the reviewing court may grant leave to appeal and order the clerk to transmit the notice of appeal to the trial court for filing." *Id.*

¶ 35 Illinois Supreme Court Rule 373(b), (c) (eff. Feb. 1, 2024), which is applicable in criminal cases under Illinois Supreme Court Rule 612(b)(18) (eff. July 1, 2017), provides, if received after the due date, the time of mailing of a notice of appeal shall be deemed the time of filing.

¶ 36 Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017) provides, in the case of service by mail by an incarcerated *pro se* litigant, service is proved by certification under section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2024)) of the person who deposited the document in the institutional mail, "stating the time and place of deposit and the complete address to which the document was to be delivered." Thus, when a notice of appeal is filed outside the 30-day period following the order being appealed, the notice is deemed timely if the defendant attaches a proof of service in compliance with Rule 12(b)(6) showing it was mailed to the clerk of the trial court within the 30-day period.

¶ 37 Here, defendant's motion for leave to file a late appeal was due September 9, 2024, representing 30 days after the expiration of the original 30 days defendant had for filing his notice of appeal. The State argues the motion was untimely filed on September 24, 2024, but ignores that, because defendant was incarcerated and filed his motion *pro se*, the motion was deemed filed on the date defendant placed it in the institutional mail. Defendant provided a proper sworn certification that he placed the motion in the mail on August 28, 2024. See 735

- 12 -

ILCS 5/1-109 (West 2024). Accordingly, his notice, which showed a reasonable excuse for the late filing, was timely, and we have jurisdiction over the appeal.

¶ 38    B. Denial of the Motion for Leave to File a Successive Postconviction Petition

¶ 39    Aside from arguing lack of jurisdiction, the State argues multiple reasons to affirm the trial court's denial of leave to file the successive postconviction petition. We agree with the State defendant cannot show cause supporting leave to file a successive petition because a claim of ineffective or unreasonable assistance of postconviction counsel in an earlier postconviction proceeding is not cognizable under the Act. Defendant's claim trial counsel rendered ineffective assistance is *res judicata* and, to the extent an exception could be found to address defendant's claims, defendant could not show prejudice based on the merits.

¶ 40    The Act permits a defendant to file a petition alleging "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2024). Postconviction proceedings are collateral to proceedings on direct appeal, centering on constitutional claims that were not, and could not have been, previously decided. *People v. Moore*, 2023 IL App (4th) 210245, ¶ 44. Therefore, issues raised and adjudicated on direct appeal are barred by *res judicata*, and issues "that could have been raised but were not" are precluded by forfeiture. *Id.*

¶ 41    "The Act itself contemplates the filing of a single petition." *People v. Lusby*, 2020 IL 124046, ¶ 27. The filing of a successive postconviction petition is highly disfavored because it plagues finality. *People v. Clark*, 2023 IL 127273, ¶ 39. Thus, only one postconviction petition may be filed without leave of court. *Id.*; 725 ILCS 5/122-1(f) (West 2024).

¶ 42    "[T]he statutory bar to a successive postconviction petition will be relaxed when

fundamental fairness so requires." *People v. Lee*, 207 Ill. 2d 1, 5 (2003) (citing *People v. Flores*, 153 Ill. 2d 264, 274 (1992)). "To establish that fundamental fairness requires that a successive postconviction petition be considered on the merits, the defendant must show both cause and prejudice with respect to each claim presented." *Id.*

¶ 43        The Act provides a defendant may show "cause" by identifying an objective factor that impeded the defendant's ability to raise a specific claim during his or her initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2024). Our supreme court has clarified this definition by stating "cause" refers to any objective factor, *external to the defense*, which impeded the petitioner's ability to raise a specific claim in the initial postconviction proceeding. See, *e.g.*, *People v. Montanez*, 2023 IL 128740, ¶ 105; *People v. Tenner*, 206 Ill. 2d 381, 393 (2002); *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002); *Flores*, 153 Ill. 2d at 279. "Prejudice" is shown by "demonstrating that the claim not raised during [defendant's] initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2024).

¶ 44        The trial court is to make cause-and-prejudice determinations on the pleadings by conducting a preliminary screening to "determine whether the motion adequately alleges facts that make a *prima facie* showing of cause and prejudice." *Clark*, 2023 IL 127273, ¶ 47. We review *de novo* the court's cause-and-prejudice assessment. *Id.*

¶ 45        Our supreme court has held "the post-conviction process does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier post-conviction proceeding." *People v. Szabo*, 186 Ill. 2d 19, 26 (1998). Thus, this court has also recently stated a "defendant may not assert a claim of ineffective assistance of postconviction counsel during the initial postconviction proceedings in a successive petition." *People v. Schoolcraft*, 2025 IL App

(4th) 241223-U, ¶ 21.

¶ 46    "Because the right to counsel in post-conviction proceedings is derived from statute rather than the Federal or State Constitutions, post-conviction petitioners are guaranteed only the level of assistance provided for the by the Act." *Flores*, 153 Ill. 2d at 276. That assistance has been defined by our supreme court to mean a "reasonable" level of assistance. *Id.* "Therefore, because the Act was designed to address only deprivations of constitutional magnitude, a petitioner's claim of ineffective assistance of post-conviction counsel at a prior post-conviction proceeding does not present a basis upon which relief may be granted under the Act." *Id.*; see *People v. Custer*, 2019 IL 123339, ¶ 30 (stating that postconviction defendants "have no constitutional right to counsel, effective or otherwise"). Further, "attorney error short of ineffective assistance of counsel does not constitute cause." *Flores*, 153 Ill. 2d at 280.

¶ 47    Even when assuming abandonment of a claim by postconviction counsel was deficient and unreasonable, supreme court precedent makes it clear that does not establish cause. *People v. Mack*, 2022 IL App (1st) 162344-U, ¶ 26 (citing *Custer*, 2019 IL 123339, ¶ 30); see *People v. Boclair*, 2024 IL App (4th) 230142-U, ¶ 18 (stating defendant's claim concerning the performance of appellate postconviction counsel was not a viable claim under the Act); *People v. Schwab*, 2023 IL App (5th) 220639-U, ¶ 20 (noting cause requires "a factor *external to the defense*," and a successive petition does not provide a forum to challenge the conduct of postconviction counsel at an earlier proceeding (emphasis in original)); but see *People v. Nicholas*, 2013 IL App (1st) 103202, ¶¶ 45-46 (addressing whether the defendant could establish cause by determining whether postconviction appellate counsel's failure to raise the defendant's claims on appeal was unreasonable). Thus, while a claim of ineffective assistance of appellate counsel could be cognizable under the Act, a claim of ineffective or unreasonable assistance of

- 15 -

appellate postconviction counsel would not be cognizable when seeking leave to file a successive petition. See *Flores*, 153 Ill. 2d at 280.

¶ 48        Based on *Pitsonbarger*, defendant argues we nevertheless are able to find cause to address his claims, suggesting the failure of postconviction counsel to appeal was a fundamental deficiency in the initial postconviction proceeding. However, while there is some discussion in *Pitsonbarger* supporting defendant's argument, the *Pitsonbarger* court nevertheless defined "cause" as a factor external to the defense and ultimately did not address whether the defendant was able to show cause. See *Pitsonbarger*, 205 Ill. 2d at 460-64. Instead, the court considered only whether the defendant failed to show prejudice. *Id.* at 464. Defendant's interpretation of *Pitsonbarger* is also contrary to our supreme court's previous, clear statement that "the post-conviction process does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier post-conviction proceeding." *Szabo*, 186 Ill. 2d at 26.

¶ 49        Defendant also cites *People v. Lyles*, 217 Ill. 2d 210, 213, 220 (2005), in which our supreme court, under its supervisory authority, reinstated an appeal based on postconviction counsel's failure to file an appellate brief. The court, in *dicta*, noted the possibility the defendant could also file a successive postconviction petition. However, the court did not undertake any substantive analysis of whether cause and prejudice could be established. *Id.* at 219.

¶ 50        Finally, defendant cites *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶¶ 40-43, in which this court addressed and rejected an argument postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. Apr. 26, 2012). However, this court did not address whether the postconviction process could provide a forum in which a defendant could challenge the conduct of counsel at an earlier postconviction proceeding.

¶ 51        Here, without further guidance from our supreme court, we are not convinced the

cases defendant relies on allow us to consider defendant's claim of ineffective or unreasonable assistance of postconviction counsel on appeal from the denial of his motion for leave to file a successive petition. Instead, we apply the supreme court's clear rule that "the post-conviction process does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier post-conviction proceeding." *Szabo*, 186 Ill. 2d at 26; see *Flores*, 153 Ill. 2d at 276 ("[A] petitioner's claim of ineffective assistance of post-conviction counsel at a prior post-conviction proceeding does not present a basis upon which relief may be granted under the Act.").

¶ 52    Aside from unreasonable assistance of postconviction counsel, defendant also argues his trial counsel was ineffective for failing to tender a reckless conduct instruction. However, that issue has been previously litigated and is *res judicata*. See *Mack*, 2022 IL App (1st) 162344-U, ¶¶ 27-30. "Specifically, *res judicata* applies following a final judgment on the merits by a court of competent jurisdiction that involves the same parties and cause of action." *Id.* ¶ 27. While there are exceptions to application of the doctrine of *res judicata*, we find they do not apply here, where the procedural posture of the case is in the context of a successive postconviction petition. An issue that was previously litigated and is raised again in a successive proceeding cannot satisfy the cause-and-prejudice test because the issue had, indeed, been raised in the earlier proceeding. *Id.* (citing *Tenner*, 206 Ill. 2d at 399 (Freeman, J., specially concurring)). Here, "[w]hile *this* court did not previously rule on the merits of this specific claim during defendant's initial postconviction proceedings, the trial court did." (Emphasis in original). *Id.* ¶ 33.

¶ 53    Overall, defendant argues the unique procedural posture of this case, which prevented him from being able to appeal the trial court's denial of his postconviction claim,

should allow us to find cause to obtain leave to file a successive postconviction petition. We recognize the difficulty the unusual procedural posture of this case presents to defendant and to this court, and we are not without sympathy for defendant's predicament. However, we lack the supervisory authority of our supreme court. *People v. Whitfield*, 228 Ill. 2d 502, 521 (2007). The appellate court may not exceed statutory authority no matter how desirable or beneficial the attempted innovation might be and, while the appellate court may exercise significant powers on review of a criminal appeal, it does not possess the same inherent supervisory authority conferred on the supreme court. *Id.* Thus, we have no authority to overcome the requirements and limitations of the Act. *Mack*, 202 IL App 1st 162344-U, ¶ 31.

¶ 54    In any event, even assuming, *arguendo*, we were able to apply an exception to find defendant established cause, we would nevertheless find he failed to establish prejudice because his underlying claim lacks merit. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's assistance was objectively unreasonable under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Veach*, 2017 IL 120649, ¶ 30 . Regarding the first prong, a defendant must overcome a strong presumption counsel's actions were the product of sound trial strategy. *People v. Barrow*, 133 Ill. 2d 226, 247 (1989); *People v. Dominguez*, 331 Ill. App. 3d 1006, 1014 (2002). Because the defendant must satisfy both prongs of the test, the failure to establish either one is fatal to his claim. *People v. Ceja*, 204 Ill. 2d 332, 358 (2003).

¶ 55    A reviewing court will not reverse a trial court's findings regarding credibility determinations or fact finding after a third-stage postconviction evidentiary hearing unless the findings are manifestly erroneous. *People v. House*, 2023 IL App (4th) 220891, ¶ 78. "Manifest

error is clearly evident, plain, and indisputable." (Internal quotation marks omitted.) *Id.* "Thus, a decision is manifestly erroneous when the opposite conclusion is clearly evident." (Internal quotation marks omitted.) *Id.*

¶ 56        The decision of whether to submit an instruction on a lesser charge to the jury, much like the decision of what plea to enter, ultimately belongs to the defendant. *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994). Accordingly, the failure to permit a defendant to make that decision would constitute reversible error. *Id.* at 229-30.

¶ 57        In contrast, where a defendant has made the decision whether to give a lesser-included offense instruction, that decision is considered one of trial strategy, which has no bearing on the competency of counsel. *Dominguez*, 331 Ill. App. 3d at 1015. Thus, that decision cannot form the basis of an ineffective assistance of counsel claim. *Id.* Depending on the particular circumstances of each individual case, a defendant may decide to go with an all-or-nothing approach and not tender a lesser-included offense instruction, leaving the jury with the option to convict the defendant of the primary charged offense or acquit him. See *People v. Richardson*, 2011 IL App (4th) 100358, ¶ 12.

¶ 58        Here, at the third-stage evidentiary hearing, the trial court heard conflicting testimony as to whether counsel informed defendant of the ability to request an instruction on the lesser-included offense of reckless conduct. While defendant claimed he was misinformed and wanted the instruction, Pumilia specifically denied misinforming defendant. Pumilia also specifically testified counsel discussed all of the alternatives with defendant and stated, "I know we discussed reckless conduct with him." Pumilia further specifically stated he would have tendered the instruction had defendant asked for it. Then, Pumilia's testimony showed the trial strategy was to pursue an all-or-nothing approach, which would not include instructions

concerning lesser-included offenses to aggravated battery with a firearm. Thus, there was ample support for the trial court's determination defendant knew of his right to request the instruction and chose not to do so based on counsel's trial strategy.

¶ 59 The trial court factually found the matter was a decision of trial strategy and that defendant did not request the instruction, stating, "I won't grant a new trial because of the fact that a reckless conduct instruction was never given, it was never requested." Given there was evidence counsel discussed reckless conduct with defendant and did not erroneously tell him there were no lesser-included offenses of aggravated battery with a firearm, the court's determination was not against the manifest weight of evidence. Thus, even if counsel had raised the matter in the State's appeal from the court's grant of postconviction relief, it would have lacked merit. As such, defendant could not show the prejudice required to file a successive postconviction petition.

¶ 60 III. CONCLUSION

¶ 61 For the reasons stated, the judgment of the trial court is affirmed.

¶ 62 Affirmed.