2025 IL App (1st) 241175

FIRST DISTRICT
SECOND DIVISION
December 30, 2025

No. 1-24-1175

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11CR155 |
| | ) | |
| DENZEL PITTMAN, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant Denzel Pittman appeals the trial court's denial of his motion for leave to file a *pro se* successive postconviction petition. Specifically, he argues he established the requisite cause and prejudice for leave to file his successive petition because appellate postconviction counsel failed to appeal three arguable constitutional claims alleged in his initial postconviction petition.

¶ 2    Following a bench trial, defendant Denzel Pittman was found guilty in November 2010 of the first degree murders of his girlfriend Jade Hannah, age 17; her mother Stacy Cochran, age 43; and her younger sister Joi Cochran, age 11. The trial court subsequently sentenced defendant to a mandatory term of natural life in prison.

¶ 3    Defendant's bench trial was conducted in March 2015. The victims' deaths occurred at their residence, located at West 111th Street and South Bell Avenue in Chicago. We previously

recounted the evidence presented at defendant's trial thoroughly in his direct appeal. See *People v. Pittman*, 2018 IL App (1st) 152030, ¶¶ 3-13. We outline the evidence presented at defendant's trial as context for the disposition that follows.

¶ 4    The victims lived in a second floor apartment of a multi-unit building containing six apartments, with two units on each floor. Linda Abraham lived on the second floor across the hall from the victims, while the Thompson family lived in the first floor unit underneath Abraham's apartment.

¶ 5    When Courtney Thompson arrived home from work around 9:40 p.m. on November 29, 2010, she saw Jade sitting on the stairs between the first and second floors with defendant. Courtney entered her apartment and heard Jade and defendant talking. While she worked on a computer near the front door, her parents, Arthur and Sherry, watched television in their bedroom. A short time later, all three heard screams and a young girl calling for her mother in the hallway. Arthur opened the door and directed his wife to call 911. The Thompsons went into the hallway. Jade was seen lying face down on the landing between the first and second floors. Sherry, a nurse, attempted to resuscitate Jade, and she observed stab wounds on Jade's chest while trying to render aid.

¶ 6    Defendant then exited the victims' apartment and closed the door. He asked the Thompsons if the police had been called and if they saw who did it. He told them he was going to find the offender. Courtney and Arthur observed blood on defendant's clothing. The Thompsons gave a description of defendant to the police. Courtney and Arthur separately identified defendant in a lineup as the person they saw leaving the victims' apartment.

¶ 7    Abraham heard screams outside her apartment and looked through her peephole. She observed a young man from the side with his fist moving rapidly up and down. It looked like the

man was punching someone, but she was unable to see who or what he was punching. Abraham said the young man was holding up the person with his other hand. She did not observe a knife. She described the young man as African American and medium height. As she watched, she observed the young man move out of sight into the victims' apartment. She then heard screaming from the back of the victims' apartment. She again looked through the peephole and saw the young man and did not hear any screaming. When she opened her door, she observed blood on the wall.

¶ 8    After Lieutenant Michael Ryan arrived at the scene, he went to the victims' apartment and knocked. When he received no response, he entered the unit. He observed Stacy "laying in a pool of blood" just inside the unit. In the back of the apartment, the lieutenant observed Joi's legs also "in a pool of blood."

¶ 9    Joseph Banks lived approximately three blocks from the scene. At around 10:30 p.m. that night, he was watching television with his wife when defendant walked up to their house and knocked on the door. Banks opened the inner door but left the outer door closed. He observed defendant as dirty, shaking, and out of breath. Defendant told Banks that he had lost his keys and asked to use Banks's phone to make a call. Banks gave defendant a phone to use and heard defendant ask his mother to pick him up. After defendant left, Banks did not observe any blood on the phone. Banks then saw several police cars speed past his house. He called 911 to report his encounter with defendant.

¶ 10    After a description of the offender was broadcast on the police radio, police officers observed an individual matching that description. Police officers pulled over, announced their office, and asked defendant to approach, but defendant fled on foot. Another officer observed defendant behind some bushes near a retirement home. When the officer announced his office,

3

defendant fled around the building. Soon after, defendant was taken into custody and was informed of his *Miranda* rights by Lieutenant Ryan. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant told the lieutenant he was coming from his girlfriend's house on Bell Avenue, and when asked what happened, defendant said he was "just defending" himself.

¶ 11    Forensic testing of defendant's clothing was compared to the DNA samples of the victims. One clipping from defendant's pants matched Stacy's profile and a second clipping matched Joi's profile. A third mixed sample from defendant's pants could not exclude Jade but could exclude Stacy and Joi.

¶ 12    The medical examiner testified that all victims suffered multiple stab wounds, which were fatal, and the manner of death was homicide. Specifically, he testified that Jade suffered 22 stab wounds, Stacy suffered 38 wounds, and Joi suffered 12 wounds. He also stated that Jade had ligature marks around her neck where she was wearing a chain and her jawbone was fractured.

¶ 13    Thomas Johnson testified that in December 2010, he was an inmate in the Cook County jail with pending cases and was assigned to a cell with defendant for four days. Johnson stated that defendant initially told him he was charged with a shooting but later said he was charged with three murders. According to Johnson, defendant told him that his girlfriend was cheating on him and he "lost it." Defendant said that if he could not have her, then he did not want anyone to have her. Defendant stabbed her with a pocketknife. While he was stabbing Jade, her mother Stacy came out with a knife. Defendant then stabbed Stacy and then looked for Joi and stabbed her because he did not want her to identify him. He worried that the neighbors saw him, and he had blood on his clothing. Defendant said he threw the knife away. He told Johnson that he did not feel bad about killing Jade and Stacy, but he felt bad about killing Joi.

¶ 14    Johnson also testified that he spoke with defendant about his defense in this case. Johnson told defendant to plead insanity, but defendant wanted to claim self-defense because Stacy cut his hand. Johnson admitted that he planned to use his testimony to benefit his pending criminal cases, but he did not receive any benefit for his testimony.

¶ 15    Defendant rested without presenting any evidence. Following arguments, the trial court observed that the evidence was "overwhelming" and found defendant guilty of the first degree murders of Jade, Stacy, and Joi. The court subsequently sentenced defendant to a term of natural life on each of the counts of murder, to run concurrently.

¶ 16    On direct appeal, defendant asserted his mandatory natural life sentence violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), under *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny because the sentence was mandated without a consideration of defendant's age and other mitigating factors. *Pittman*, 2018 IL App (1st) 152030, ¶ 20. This court rejected defendant's eighth amendment challenge and held that the *Miller* protections are not implicated in the case of a defendant aged 18 or over. *Id.* ¶¶ 30-31. We also rejected the proportionate penalties clause challenge and found it significant that defendant "was the perpetrator in the violent stabbing deaths of Jade, Stacy, and Joi." *Id.* ¶ 38. After reviewing the factors in both mitigation and aggravation, we concluded that "a mandatory sentence of natural life does not shock the moral sense of the community and does not violate the proportionate penalties clause of the Illinois Constitution." *Id.* ¶ 40. Finally, we noted the trial judge's findings suggested that the court would have imposed a natural life sentence even if it had discretion when the judge stated defendant's actions " 'more than justifie[d] the sentence that is required by the law, a sentence of natural life.' " (Emphasis omitted.) *Id.* ¶ 41.

¶ 17    In May 2019, defendant filed his initial *pro se* postconviction petition alleging several claims of prosecutorial misconduct, ineffective assistance of trial and appellate counsel, trial court error, improper sentencing, and cumulative error. In support of his claims, defendant attached his own affidavit, as well as affidavits from his mother and grandparents. He also attached several supporting documents, including a page from his arrest report containing a narrative of the arrest, the forensic investigator's crime scene processing report, the forensic evidence submission form, a laboratory report, the trial prosecutor's sentencing memorandum, cases and statutes, and excerpts from the trial record. In July 2019, the trial court dismissed defendant's petition at the first stage in a 45-page written order.

¶ 18    Defendant raised two claims on appeal: (1) his mandatory natural life sentence was unconstitutional under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because he was 18 years old when the offenses were committed, and (2) his trial counsel was ineffective for failing to properly review pretrial discovery material and object to the tainted chain of custody for defendant's boots. We rejected defendant's claims and affirmed the summary dismissal of defendant's petition. See *People v. Pittman*, 2022 IL App (1st) 191703-U.

¶ 19    In February 2024, defendant filed his *pro se* motion for leave to file a successive postconviction petition. In his motion, he alleged multiple claims, including (1) his trial counsel was ineffective for stipulating to the chain of custody of defendant's recovered clothing and boots and (2) his appellate postconviction counsel was ineffective for failing to raise his 26 additional claims set forth in his initial petition on appeal. The trial court denied defendant leave to file the successive petition in another lengthy written order.

¶ 20    This appeal followed.

¶ 21     On appeal, defendant argues that the trial court erred in denying him leave to file his successive petition. Specifically, he contends that his appellate postconviction counsel failed to assert three arguable claims: (1) his trial counsel was ineffective for pressuring defendant to waive his right to a jury trial, (2) his trial counsel was ineffective for coercing defendant to waive his right to testify, and (3) he was denied a fair trial when the State allowed Johnson, a jailhouse snitch, to testify falsely that he did not receive a benefit in exchange for his testimony. The State's primary response is that the trial court properly denied defendant leave to file because defendant's *pro se* claim of ineffective assistance of his initial appellate postconviction counsel is not a constitutional claim warranting any relief.

¶ 22     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-9 (West 2024)) "provides a statutory remedy to defendants who claim substantial violations of their rights occurred in the proceedings that resulted in their conviction." *People v. Reed*, 2020 IL 124940, ¶ 18. A postconviction petition is not an appeal from a conviction but is a collateral attack on the trial proceedings. *Id.* "[I]ssues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited." *Id.* However, only one postconviction proceeding is contemplated under the Act (*People v. Edwards*, 2012 IL 111711, ¶ 22), and a defendant seeking to file a successive postconviction petition must first obtain leave of the court (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)). The bar against successive postconviction proceedings should not be relaxed unless (1) a defendant can establish "cause and prejudice" for the failure to raise the claim earlier or (2) he can show actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23; *People v. Smith*, 2014 IL 115946, ¶ 30. And critically, the petition must raise a constitutional claim.

¶ 23    To establish cause, a defendant must identify " 'an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' " *People v. Wrice*, 2012 IL 111860, ¶ 48 (quoting 725 ILCS 5/122-1(f) (West 2010)). A defendant shows prejudice by demonstrating that the claim so infected the trial that the resulting conviction or sentence violated due process. *Id.* A defendant must establish cause and prejudice for each individual claim to be granted leave. *People v. Pitsonbarger*, 205 Ill. 2d 444, 463 (2002). It is defendant's burden to establish a *prima facie* showing of both cause and prejudice in order to be granted leave before further proceedings on his claims can follow. See *People v. Bailey*, 2017 IL 121450, ¶ 24.

¶ 24    At the pleading stage of postconviction proceedings, we take all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record as true. *People v. Robinson*, 2020 IL 123849, ¶ 45. We review the trial court's denial of leave to file a successive postconviction petition *de novo*. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶ 25    In his successive *pro se* pleading, defendant argued that his constitutional "right to effective assistance of counsel was denied when retained appellate post-conviction counsel failed to preserve the claims presented in the initial post-conviction petition." He further asserted that "[a]ppellate counsel failed to preserve [defendant's] federal claims, even in the wake of constant protestation from [defendant] to retained appellate counsel to raise on appeal the claims that he presented in his initial post-conviction petition." Defendant then reasserts more than two dozen claims from his initial petition in his motion for leave to file a successive petition. However, on appeal, defendant has limited his claim to his appellate postconviction counsel's failure to raise the following three issues: (1) his trial counsel was ineffective for coercing defendant into waiving his right to a jury trial, (2) his trial counsel was ineffective for coercing him to waive his

right to testify, and (3) the State allowed Johnson to testify falsely that he did not receive a benefit for his testimony.

¶ 26    As we fully explain below, defendant's claims fail for three specific and independent reasons: (1) defendant cannot change the claim originally raised in his initial *pro se* motion to argue new constitutional claims on appeal, (2) the three issues raised on appeal are barred by the doctrine of *res judicata* because these issues were previously raised and ruled on by the trial court in his initial postconviction proceedings, and (3) most important, defendant has not raised a constitutional claim to support relief under the Act.

¶ 27    First, issues that were not raised in the trial court or in defendant's motion for leave to file a successive postconviction petition cannot be raised for the first time on appeal. See *People v. Jones*, 213 Ill. 2d 498, 506-09 (2004). Defendant's constitutional claim in his *pro se* motion was the ineffective assistance of his appellate postconviction counsel, not the more than two dozen claims he had asserted in his initial petition. Nor did he allege that a fundamental deficiency occurred in his initial postconviction proceedings. So, to the extent that defendant has raised new claims on appeal, they are forfeited.

¶ 28    Second, it is uncontested that defendant previously raised those three claims in his initial petition. In dismissing that petition, the trial court thoroughly considered and rejected each claim in its 45-page written order. As noted earlier, "[t]he doctrine of *res judicata* bars consideration of issues that were previously raised and definitively settled by judicial decision." *People v. Montanez*, 2023 IL 128740, ¶ 103. "[W]here a petitioner has previously taken a direct appeal from a judgment of conviction, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court, and any other claims that could have been presented to the reviewing court, if not presented, are waived." *People v. Flores*, 153 Ill. 2d 264, 274 (1992). In

proceedings under the Act, "fundamental fairness for relaxing the doctrine [of *res judicata*] is established by satisfying the requirements of the cause-and-prejudice test." *People v. Clark*, 2023 IL 127273, ¶ 45. Since these claims were raised in defendant's prior petition and ruled on by the trial court, they are barred by *res judicata* unless defendant can demonstrate why this court should relax this bar.

¶ 29    To avoid the bar of *res judicata*, defendant contends there was a "fundamental deficiency" in his initial postconviction proceedings. According to defendant, appellate postconviction counsel's failure to raise these three arguable claims on appeal was unreasonable and constituted a fundamental deficiency in those proceedings. Appellate postconviction counsel's "unreasonable decision to abandon the issues constituted a deficiency in [defendant's] initial postconviction proceedings and overcomes the bar of *res judicata*." However, defendant did not allege a fundamental deficiency in his motion for leave, he alleged ineffective assistance of appellate postconviction counsel. Again, and to repeat, a defendant may not raise new issues for the first time on appeal. See *Jones*, 213 Ill. 2d at 506-09.

¶ 30    Moreover, defendant's argument to relax the bar of *res judicata* fails because no fundamental deficiency occurred. A fundamental deficiency in the initial postconviction proceeding may constitute cause for consideration of issues raised in a subsequent petition. *Pitsonbarger*, 205 Ill. 2d at 460. However, "when 'cause' is based on a fundamental deficiency in the first post-conviction proceeding, the petitioner must show that the deficiency directly affected his ability to raise the specific claim now asserted." *Id.* at 462.

¶ 31    Here, defendant ignores that he *did* bring these claims in his initial petition and the trial court considered each of them, regardless of whether counsel presented further argument thereon or whether the appellate court addressed it. For this reason, he cannot establish cause, nor has he

shown how his first postconviction proceedings were deficient in some fundamental way. As the supreme court has observed, " 'an otherwise meritorious claim has no basis in law if *res judicata* or forfeiture bar the claim.' " *People v. Alcozer*, 241 Ill. 2d 248, 258 (2011) (quoting *People v. Blair*, 215 Ill. 2d 427, 445 (2005)). In reaching this conclusion, we review and recount the trial court's written order disposing of defendant's first postconviction petition.

¶ 32     As noted above, defendant's first claim was that his trial counsel forced him to waive his right to a jury. In its written order, the trial court thoroughly considered and rejected this argument and found defendant had failed to demonstrate that he was induced to waive his right to a jury trial. The same judge presided over defendant's trial and recounted the lengthy colloquy between him and defendant regarding this right. As set forth in the order, the judge at trial fully admonished defendant about his right to a jury trial, the differences between a jury trial and bench trial, and whether defendant had been forced or threatened to waive this right. The judge then found "[a]s the record clearly indicates, [defendant]—after many thorough admonishments as to the rights he was giving up—continually chose to request a bench trial." The court found defendant "made a knowing and voluntary choice to proceed to a bench trial because he believed his chances were better than with a jury." The judge further observed that defendant could not "now, post-conviction, claim he was forced to make these choices because the trial court did not rule in his favor." The court concluded defendant failed to demonstrate that he had been induced to waive his constitutional right and, thus, failed to show it was arguable his trial counsel's performance was objectively unreasonable.

¶ 33     Defendant also alleged that his trial counsel was ineffective, arguing that defense counsel prevented defendant from testifying at trial. Again, the trial judge in his order set forth the admonishments provided to defendant during trial, as well as defendant's responses. The judge

11

found that the record established that he (the trial judge) "properly admonished [defendant] and made it abundantly clear to [defendant] that he alone had the power to waive the right to testify." The judge also observed, "Understanding all of these rights—as explained to him by not only his defense counsel, but the trial court as well—[defendant] still voluntarily chose not to testify and expressed his wish not to have any other witnesses called on his behalf." The judge also found defendant testified that "he was not forced, threatened, or promised anything to make the decision not to testify." The judge concluded defendant failed to demonstrate it was arguable his trial counsel's performance was objectively unreasonable or prejudicial.

¶ 34    In his third claim, defendant asserted the State presented false testimony at trial by allowing Johnson to testify that he had not been promised anything and had not received a deal in exchange for his testimony. Again, the judge rejected this claim in the written order and found that defendant failed "to substantiate his allegations with specific facts which establish the falsity of Johnson's testimony." The judge noted that defendant had attached a certified statement of Johnson's conviction and disposition as proof but found there was "nothing in the disposition presented which conflicts with Johnson's testimony at trial." As the judge observed, the trial record "clearly" indicated Johnson was "thoroughly and extensively questioned, on direct and cross-examination," about the plea deals he accepted for his pending offenses. The judge found "Johnson openly testified that he accepted plea deals that the court had offered subsequent to a [Illinois Supreme Court Rule] 402 [(eff. July 1, 2012)] conference." The judge concluded that "nothing in [defendant's] petition remotely points to the State's knowing use of perjury" and only a knowing use of perjured testimony would constitute a constitutional violation.

¶ 35    As our review of the trial court's extensive order shows, there was no fundamental deficiency in those proceedings. The trial court thoroughly considered each claim raised by

12

reviewing the trial record as well as relevant authority. The court meticulously detailed the admonishments given to defendant when he waived both his right to a jury trial and his right to testify. The court also concluded defendant failed to support his claim that Johnson testified falsely. After having reviewed the record, this court also finds that the trial court was thorough in accepting defendant's jury waiver, as well as his waiver of his right to testify. Since defendant's constitutional claims were specifically and fully reviewed by the trial court, he cannot demonstrate a substantial denial of his constitutional rights amounting to a fundamental deficiency and the claims are barred by *res judicata*. See *People v. Tenner*, 206 Ill. 2d 381, 399 (2002) (Freeman, J., specially concurring) (reasoning that "[a]n issue that was previously litigated and is raised anew in a successive proceeding can never fall under the ambit of the cause and prejudice test because the issue had, indeed, been raised in the earlier proceeding").

¶ 36      The third basis, and most fatal to defendant's contention, is that defendant failed to set forth a constitutional claim on appeal. More specifically, postconviction proceedings are limited to constitutional claims arising from his original trial and sentencing, and appellate postconviction counsel's representation is not a constitutional claim. See *Flores*, 153 Ill. 2d at 275-76. While he frames his claim as a "fundamental deficiency," he repeatedly refers to appellate postconviction counsel's representation as "unreasonable," which is the standard used to evaluate an attorney's representation in postconviction proceedings.

¶ 37      The right to counsel in proceedings under the Act is not a constitutional right, but strictly a matter of legislative grace, derived from the Act. *People v. Huff*, 2024 IL 128492, ¶ 21 (citing *People v. Custer*, 2019 IL 123339, ¶ 30). It is well established that a defendant "cannot claim sixth amendment ineffective assistance of counsel" in postconviction proceedings. *Flores*, 153 Ill. 2d at 276. "[B]ecause the Act was designed to address only deprivations of constitutional

magnitude, a petitioner's claim of ineffective assistance of post-conviction counsel at a prior post-conviction proceeding does not present a basis upon which relief may be granted under the Act." *Id.*

¶ 38    Instead, a postconviction defendant is entitled to only a reasonable level of assistance, which is a standard lower than that provided by the federal or state constitutions. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). The supreme court has said this distinction is rational because trial counsel plays a different role than counsel in postconviction proceedings. *People v. Addison*, 2023 IL 127119, ¶ 19 (citing *People v. Owens*, 139 Ill. 2d 351, 364 (1990)). "While a defendant is presumed innocent prior to trial, a postconviction petitioner has already been stripped of the presumption of innocence." *Huff*, 2024 IL 128492, ¶ 21.

¶ 39    Defendant agrees that "the unreasonable assistance of postconviction counsel cannot be a constitutional claim cognizable under the Act" and maintains that he is not raising that claim here. Instead, defendant has again improperly reframed his claim to assert that a "fundamental deficiency" occurred in his initial postconviction proceeding.

¶ 40    However, supreme court precedent has long held that the postconviction relief is limited to claims that occurred in the original proceeding, referring to the initial trial. See *Flores*, 153 Ill. 2d at 277. In *Flores*, the supreme court considered "the propriety" of a second postconviction petition seeking relief from the ineffective assistance of postconviction counsel from the first postconviction proceeding. *Id.* at 275-76. The *Flores* court found that the Act does not "provide a forum to test the propriety of conduct" at a prior postconviction proceeding. *Id.* at 277. "Thus, where a petitioner files a second or subsequent post-conviction petition wherein he claims ineffective assistance in his first post-conviction proceeding, consideration of those claims is beyond the scope of the Act." *Id.* The court detailed its holding.

"In sum, where a defendant files a second or subsequent post-conviction petition in which he claims sixth amendment ineffective assistance of prior post-conviction counsel, because there is no right to sixth amendment counsel in post-conviction proceedings, such claims do not present a basis upon which relief may be granted under the Act. Further, where a defendant files a second or subsequent post-conviction petition wherein he claims ineffective assistance in his first post-conviction proceeding, because the Act is confined to errors which occurred in the original proceeding only, such claims are beyond the scope of the Act." *Id.* at 280.

¶ 41    The supreme court later reaffirmed its conclusion in *People v. Szabo*, 186 Ill. 2d 19, 26 (1998). There, in his initial postconviction petition, the defendant asserted the ineffectiveness of his trial counsel, as well as the two attorneys who subsequently represented him at a second sentencing hearing. *Id.* at 24. Following the denial of that petition, the defendant argued before the supreme court that his postconviction counsel had failed to properly substantiate his constitutional claims. The supreme court found that postconviction counsel had adequately complied with the Act and Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). *Szabo*, 186 Ill. 2d at 24 (citing *People v. Szabo*, 144 Ill. 2d 525, 532 (1991)).

¶ 42    Subsequently, the defendant sought to file a successive postconviction petition to reexamine the supreme court's holding in light of new authority. The *Szabo* court held that such a reexamination was barred for two reasons. *Id.* at 25. First, the court observed the defendant's prior postconviction proceedings had fully concluded prior to the issuance of new case law. *Id.* at 25-26. Second, and most relevant in this case, the court pointed out it had previously held that "the post-conviction process does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier post-conviction proceeding." *Id.* at 26 (citing *Flores*, 153 Ill. 2d

at 276-77).

> "Post-conviction relief is limited to constitutional deprivations occurring at trial or sentencing. 725 ILCS 5/122-1(a) (West 1996). The conduct of counsel in an earlier post-conviction proceeding, however, is by definition outside the ambit of post-conviction relief. Moreover, because there is no constitutional right to counsel in post-conviction proceedings (*Pennsylvania v. Finley*, 481 U.S. 551, 555 *** (1987)), the conduct of post-conviction counsel is not subject to a later constitutional challenge. Because the present defendant's second post-conviction petition is, in essence, a challenge to the performance of counsel at the initial post-conviction proceeding, this successive petition should be barred." *Id.*

¶ 43     More recently, another panel of this court rejected a similar claim of a " 'fundamental deficiency' " in a prior postconviction proceeding. *People v. Mack*, 2022 IL App (1st) 162344-U, ¶ 25. There, the defendant sought leave to file his successive petition arguing that his trial counsel was ineffective for failing to investigate evidence to show the defendant accidentally shot the victim. *Id.* ¶ 20. The defendant admitted that he previously raised this claim in a prior postconviction petition, but " 'both of [the defendant's] appointed attorneys unreasonably failed to argue the merits of this claim, and this was not [the defendant's] fault.' " *Id.* ¶ 25. The reviewing court was unpersuaded, observing that the defendant "*did* bring this claim in his initial 2011 petition and the trial court denied it, regardless of whether counsel presented further argument thereon or whether the trial court and appellate court directly addressed it." (Emphasis in original.) *Id.*

¶ 44     The *Mack* court, citing both *Szabo* and *Flores*, then rejected the assertion that postconviction counsel's representation could form the basis of a constitutional claim in a

postconviction petition. *Id.* ¶ 26. "This is because there is no constitutional right to postconviction counsel and, consequently, a challenge to postconviction counsel could never constitute a constitutional claim, as required under the Act." *Id.* Further, "[e]ven assuming that postconviction counsel's abandonment of defendant's claim was deficient and unreasonable, supreme court precedent makes clear that this does not establish 'ineffective assistance' or cause." *Id.* The reviewing court further concluded the previously raised claim was barred by *res judicata*. *Id.* ¶¶ 27-28. The defendant's prior "ineffective assistance of counsel claim was dismissed by the trial court, a court of competent jurisdiction. Not only were the parties the same, but the evidence and cause of action were too." *Id.* ¶ 28. The court found that *res judicata* "clearly applie[d]" and defeated the defendant's ability to satisfy the requisite cause and prejudice test. *Id.*

¶ 45    We reach the same result in this case. As previously discussed, defendant already raised the three claims argued on appeal, and the trial court reviewed each one. Appellate postconviction counsel's decision not to challenge those claims on appeal does not set forth a constitutional issue. Further, there was no fundamental deficiency when the claims were indeed raised and ruled upon. Accordingly, we find the trial court properly denied defendant leave to file his successive petition.

¶ 46    Defendant's reliance on *People v. Guy*, 2025 IL 129967, is misplaced, the facts presented there are easily distinguishable from the facts in this case. In *Guy*, the defendant sought to file a successive petition, raising for the first time the issue of inconsistent verdicts and ineffective assistance of counsel. *Id.* ¶ 1. The substantive issue on appeal was whether a defendant could be convicted of attempted first degree murder if the defendant acted with intent to kill with lawful justification, *i.e.*, acting in self-defense. *Id.* ¶ 29. There, the defendant had been convicted of both

attempted first degree murder of one victim and the second degree murder based on the defendant's subjective belief that his actions toward the second victim were lawfully justified. *Id.* ¶ 1. The jury had been instructed that the defendant "could be found guilty of attempted first degree murder if he had the intent to kill, which allowed for a conviction despite the jury's finding that [the defendant] acted with the subjective intent to kill with lawful justification." *Id.* ¶ 66.

¶ 47 Only after resolving the substantive issue did the supreme court consider the failure of the defendant's attorneys to raise these claims in a timely manner. *Id.* ¶ 67. The *Guy* court observed that "[t]hree attorneys share in the fault for failing to adequately raise these issues: trial counsel, direct appeal counsel, and appointed [successive] postconviction counsel." *Id.* Relevant here, the court found that the defendant's successive postconviction counsel failed to present the defendant's instruction issue in proper legal form, *i.e.*, appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness. *Id.* ¶ 69. Further, successive postconviction counsel failed to file a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). The reviewing court noted that had postconviction counsel properly framed the defendant's claims, then it would have thwarted the State from raising a procedural bar. *Guy*, 2025 IL 129967, ¶ 69.

¶ 48 In contrast, defendant here explicitly raised these constitutional claims in his initial petition. Unlike the defendant in *Guy*, no attorney prevented defendant from having the trial court consider the merits of his claims. As thoroughly discussed above, the trial court thoughtfully considered these claims in defendant's initial postconviction proceedings. For these reasons, we find *Guy* distinguishable from the circumstances here.

¶ 49 Since we have concluded that defendant has failed to set forth a constitutional claim, the

18

trial court properly denied him leave to file his successive postconviction petition. Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 50   Affirmed.

*People v. Pittman*, **2025 IL App (1st) 241175**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CR-155; the Hon. Timothy J. Joyce, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Sydney Warda, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Tasha-Marie Kelly, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |